Johnny Logan **HICKS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 120–87.

Court of Criminal Appeals of Texas,
En Banc.

Sept. 13, 1989.

Rehearing Denied Nov. 8, 1989.

Lee Ann Dauphinot, Fort Worth, for appellant.

Tim Curry, Dist. Atty., C. Chris Marshall and David L. Richards, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

**PER CURIAM.**

Appellant was convicted by a jury of the offense of aggravated robbery. Punishment was assessed, after enhancement by a previous aggravated robbery conviction, at thirty-three years in the Texas Department of Corrections.

On appeal, appellant's conviction was affirmed by the Fort Worth Court of Appeals. In their opinion, the court found that although "defendants are entitled to ask proper questions during voir dire to support peremptory challenges," it was within the trial court's discretion to limit appellant's voir dire examination to "germane" matters. *Hicks v. State*, 722 S.W.2d 257 (Tex.App.—Fort Worth 1986).

We granted appellant's petition for discretionary review to examine the holding of the Court of Appeals. After careful review of the briefs of the respective parties and the opinion of the Court of Appeals, we have determined that appellant's petition

for discretionary review was improvidently granted.

Just as in cases where this Court refuses to grant a petition for discretionary review, this Court's decision to order appellant's petition for discretionary review dismissed as improvidently granted should not be construed as approval by this Court of the language or reasoning used by the Court of Appeals in reaching its decision.

Appellant's petition for discretionary review is, therefore, ordered dismissed.

CLINTON, J., dissents to dismissal for being "improvidently granted" when in the same breath the majority disclaims "the language or reasoning" of the Fort Worth Court.

TEAGUE, Judge, dissenting.

Because I find that a majority of this Court erroneously concludes that this Court's decision to grant the petition for discretionary review that was filed on behalf of Johnny Logan Hicks, henceforth appellant, was improvident; therefore, the petition for discretionary review is ordered dismissed, I respectfully file this dissenting opinion.

The record reflects that after the jury panel in this cause was informed that the State's burden of proof was beyond a reasonable doubt, Hon. Tim Evans, trial counsel for appellant, sought to ask the jury panel the following questions in the abstract: "[W]ould [anybody] convict a person ... because you thought ... it was more likely that they were guilty than not? ... [W]ould [anyone] convict a person ... just because you thought they were probably guilty." The trial judge refused to let the venirepersons respond to these questions. The record makes it clear, or should make it clear to almost anyone, that the trial judge was under the wrongful impression that Evans was trying to get the jurors to place upon the State a different burden of proof than beyond a reasonable doubt. However, as Evans explained, or at least tried to explain to the trial judge, he was asking the abstract questions not only for possible challenges for cause under the

law, but also asking the questions, as phrased, so that he might intelligently exercise his peremptory challenges. Almost needless to say, the trial judge was unimpressed and unpersuaded by Evans's argument. I find that the trial judge clearly and unduly restricted Evans' voir dire examination when he refused to permit Evans to ask in the abstract the venirepersons the above questions.

On direct appeal, the Fort Worth Court of Appeals sustained the trial judge's decision not to let Evans ask the venirepersons the abstract questions, and held that "the line of inquiry was improper." *Hicks v. State,* 722 S.W.2d 257 (Tex.App.—2nd 1986). The court of appeals, using *its* interpretation of what the questions might have meant to the members of that Court had they been on the jury panel, concluded that because *it* believed that "a person could be 'probably' guilty without being guilty 'beyond a reasonable doubt'," and further concluded, "But a person guilty 'beyond a reasonable doubt' must perforce be 'probably' guilty," held: "[T]he questions phrased on 'probably' might well be confusing to a prospective juror." Whether members of a particular court of appeals might have been confused by a particular question, however, is not the test.

I find that the court of appeals has read into the questions that Evans asked far more than what actually might be present within the abstract questions, i.e., the court of appeals appears to have concluded, because the subject of the standard of proof, beyond a reasonable doubt, had been mentioned earlier, Evans, by his abstract, and yet specific personalized questions, was simply trying to confuse the jurors. Given the state of the record, I find that such a conclusion is ludicrous. Evans was not doing any such thing; he was merely trying to obtain information from the venirepersons that would have enabled him to make a more intelligent decision on whether to exercise a peremptory strike on a particular venireperson.

This Court granted appellant's petition for discretionary review that was filed by new counsel, Hon. Lee Ann Dauphinot, who is now a district court judge in Tarrant County, in order to make the determination whether the court of appeals correctly decided the issue. I find that Judge Dauphinot correctly asserts the following in the petition for discretionary review that she filed: "The court of appeals erred in implicitly holding that the trial court can dictate the actual wording of questions to the jury panel even though the general area of inquiry might be proper." (Page 3, appellant's petition for discretionary review.) Judge Dauphinot also correctly points out that in deciding whether a voir dire question is proper, it is important to make the determination whether the purpose of the question is to get a challenge for cause sustained, *or* whether the purpose is to merely ferret out general information from the panel as a whole or from individual members of the panel that might go to the use of a peremptory strike. The two are totally distinct inquiries.

A prospective juror who responds to a general abstract question, by stating that he would convict an accused because "he thought they were probably guilty," without more, may be saying that he would not hold the State to its burden of proof, thus subjecting himself to a challenge for cause, or he might actually be agreeing to hold the State to no greater burden of proof than beyond a reasonable doubt, which would not subject him to a challenge for cause, but might cause him to be peremptorily struck. Therefore, it is necessary for counsel to probe deeper and ascertain just what the venireperson's thoughts on the issue might be, in order to determine whether the venireperson is or is not subject to a challenge for cause, or whether the juror's views on the subject might call for the exercise of a peremptory strike. And that is all that Evans was attempting to accomplish by his questions.

Although in our courtrooms we all use the same English language, not all of us give the same meaning to words of that language that the speaker does, and oftentimes it is only after ascertaining what the speaker actually meant when he used a particular word, is it clear what he actually meant. The opinion by the court of appeals

makes it clear to me that they are awfully familiar with *Alice in Wonderland.* I believe the following segment is applicable to its opinion: " 'You are sad,' the Knight said in an anxious tone: 'let me sing you a song to comfort you.' 'Is it very long?' Alice asked, for she had heard a good deal of poetry that day. 'It's long,' said the Knight, 'but it's very, *very* beautiful. Everybody that hears me sing it—either it brings the *tears* into their eyes, or else—' 'Or else what?' said Alice, for the Knight had made a sudden pause. 'Or else it doesn't, you know. The name of the song is called Haddocks' Eyes.' 'Oh, that's the name of the song, is it?' Alice said, trying to feel interested. 'No, you don't understand,' the Knight said, looking a little vexed. 'That's what the name is *called.* The name really is "The Aged Aged Man." ' Then I ought to have said 'That's what the song is called?' Alice corrected herself. 'No, you oughtn't: that's quite another thing! The song is called "Ways and Means": but that's only what it's *called,* you know.' 'Well, what *is* the song, then?' said Alice, who was by this time completely bewildered. 'I was coming to that,' the Knight said. 'The song really *is* "A-sitting On a Gate": and the tune's my own invention.' " Carroll, *Alice's Adventure in Wonderland & Through the Looking Glass.*

In this instance, the trial judge not only prevented Evans from asking the general abstract questions, but in doing so prevented Evans from making any kind of inquiry on the subject. Judge Dauphinot also correctly argues that not all questions that counsel for the accused might ask is to establish a challenge for cause because counsel might be asking such questions to ascertain whether, from an attitude standpoint, the venireperson is going to be "an unfriendly juror" to his client, the accused, and thus subject to being peremptorily struck.

To some, a criminal defense trial attorney, or, for that matter, a prosecuting trial attorney, during his voir dire examination, who changes the wording of his questions, or, in an attempt to clarify his questions, uses comparisons, might be up to "trickera-tion" by attempting to confuse the prospective juror to the point that the juror becomes subject to a challenge for cause. However, those critics are merely reading into something an evil intent that does not exist because the mere changing of the wording of the questions is to ascertain whether the venireperson was paying attention and understood the question in the first place. This is brought home in this cause when Evans asked the venirepersons on the first row whether he had "confused anybody on the front row?", and one venireperson responded that he had. It was then necessary for Evans to further question that juror to make the determination whether the jurors actually understood the question that had been asked, and Evans unsuccessfully attempted to do just that by asking general abstract questions.

I do not disagree with the principle that the trial judge has the power and authority to see that proper voir dire examination is conducted in a particular case. However, given the faith that the Legislature of this State has placed in our trial prosecutors and criminal defense trial attorneys, and not in the trial judiciary of this State, in conducting the voir dire examination, I strongly disagree that this principle means that the members of our State trial judiciary are free to imitate their federal counterparts, where, as experience teaches us, the voir dire examination is oftentimes a farce, except in the eyes of the one who conducted the voir dire examination—the federal trial judge, who usually believes that he is the greatest voir dire examiner since Clarence Darrow or Percy Foreman walked on this earth, when in actuality, before he became a federal district court judge, his experience with voir dire examination of jury panels on the State side of the street in criminal cases was often nil.

Why is the voir dire examination process so important to the accused, as well as prosecutors? First, the voir dire examination process is not just to "knock off" prospective jurors through challenges for cause, although that unquestionably should be the goal of trial attorneys. Experience, however, teaches us that the voir dire examination process is usually used by both

sides, not to "knock off" prospective jurors through the use of challenges for cause, but, instead, to establish rapport with the venirepersons; to introduce them to counsel, the prosecutor, and the defendant; to familiarize them with the issues that the parties believe they might be called upon to resolve during their deliberations; to educate them regarding the procedures involved in a criminal trial; and to exclude through the use of peremptory strikes, for non-racial reasons, jurors believed by the prosecutor to be sympathetic to the defendant, and, likewise, jurors felt by the defendant to be sympathetic to the State. 3 *Texas Criminal Practice Guide*, § 72.03[1]. In short, a defense attorney, just like his counterpart, the prosecuting attorney, must be given leeway to interrogate the jury panel "... to the end that he may form his own conclusion, after his personal contact with the juror, as to whether in counsel's judgment [the juror] would be acceptable to him or whether, on the other hand, he should exercise a peremptory challenge to keep [the juror] off the jury." *Mathis v. State*, 167 Tex.Crim. App. 627, 322 S.W.2d 629, 631 (1959).

I personally thought and believed that since this Court handed down *Ratliff v. State*, 690 S.W.2d 597 (Tex.Cr.App.1985); *Smith v. State*, 703 S.W.2d 641 (Tex.Cr. App.1985); and *Robinson v. State*, 720 S.W.2d 808 (Tex.Cr.App.1986), and reaffirmed in *Smith* by quoting from what it had held in *Mathis*, that the issue that appellant presented on direct appeal, and presents to this Court through his petition for discretionary review, had become a non-issue, provided that the question asked was proper.

Wasn't the following "the rule"? "Therefore, to show an abuse of discretion, a defendant must demonstrate that the question he sought to ask was proper. If the question was proper and the defendant was prevented from asking it, then harm is presumed because the defendant could not intelligently exercise his peremptory challenges without the information gained from an answer ... A question is proper if it seeks to discover a juror's views on an issue applicable to the case ..." *Smith*, at page 643.

I, as one member of this Court, really believed, before today, that it was written in stone that a trial judge erred if he refused to permit defense counsel to ask relevant, material, or necessary properly phrased questions during the voir dire examination process.

In *Robinson*, the majority opinion pointed out, as applied here, where trial counsel for appellant was seeking the answer to two distinct questions, he was entitled to ask the prospective jurors the following two distinct questions, "How do you feel about a person who invokes the insanity defense?", and "How do you feel about the insanity defense?" The trial judge in *Robinson*, like here, wanted trial counsel for the defendant to combine the two questions into one question. This Court, however, held that the trial judge clearly erred by requiring such to be done.

Because I see no difference in principle between what occurred in *Robinson* and what occurred in this cause, I respectfully dissent to this Court dismissing appellant's petition for discretionary review.

MILLER and DUNCAN, JJ., join.