AUBREY MATHIS V. STATE.

No. 30,612. April 8, 1959.

*Mark Callaway,* Brownwood, for appellant.

*Leon Douglas,* State's Attorney, Austin, for the state.

DAVIDSON, Judge.

Peace officers went to the home of appellant for the purpose of executing a search warrant authorizing a search for intoxicating liquor.

Appellant was at home and, upon being advised as to the purpose of their visit, told the officers that he had some whisky in the house "setting on the ice-box." The officers found "a half-pint whiskey bottle, and it had a drink or so in the bottle." They told appellant they were not looking for such a small amount of whisky. One of the officers then asked him for the key to the box in his garage. Appellant gave the officer the key, with which he unlocked the box. Forty-seven pints of whisky and nineteen pints of vodka were found therein.

It was for the possession of that liquor for the purpose of sale in a dry area that appellant was convicted, with punishment assessed at a fine of $500 and three days in jail.

Appellant admitted the possession of the liquor, testifying, however, that he had purchased it upon the advice of his doctor for use in alleviating the heart trouble from which he suffered. He denied that he had any of the liquor for the purpose of sale, and denied that he had ever sold any liquor.

Appellant asserted that he had never been arrested before in his life for any offense.

Three witnesses attested appellant's good reputation for truth and veracity and for being a peaceable and law-abiding citizen.

The state did not challenge that reputation by evidence to the contrary.

There was no testimony suggesting that appellant had, in fact, sold whisky at any time.

The state's case and appellant's guilt depended entirely upon the prima-facie-evidence rule that possession of more than a quart of liquor in a dry area warrants the conclusion that the liquor was possessed for the purpose of sale.

In his charge the trial court instructed the jury in accordance with the defensive theory that if appellant possessed the liquor found by the officers for his own use he would not be guilty.

It is in the light of this fact situation that appellant's bills of exception are to be appraised:

Bill of Exception No. 2 certifies that upon the voir dire examination of the jury panel from which the jury to try this cause was to be selected the attorney for appellant "prepared a question to be propounded to the members of the jury panel and proposed to ask the entire panel whether or not any member thereof felt it morally wrong for a person to have in his possession an alcoholic beverage for his own use."

The objection of state's counsel that the question sought to be propounded was improper was sustained.

The bill of exception was approved without qualification.

It has been long the holding of this court that the constitutional guarantee of the right to be represented by counsel (Bill of Rights, Art. 1, Sec. 10) carries with it the right of the counsel to interrogate the members of the jury panel to the end that he may form his own conclusion, after his personal contact with the juror, as to whether in counsel's judgment he would be acceptable to him or whether, on the other hand, he should exercise a peremptory challenge to keep him off the jury. Reich v. State, 94 Texas Cr. Rep. 449, 251 S.W. 1072; Barnes v. State, 88 S.W. 805; Kerley v. State, 89 Texas Cr. Rep. 199, 230 S.W. 163; Plair

v. State, 102 Texas Cr. Rep. 606, 279 S.W. 267; Pendergrass v. State, 121 Texas Cr. Rep. 213, 48 S.W. 2d 997; Belcher v. State, 96 Texas Cr. Rep. 383, 257 S.W. 1097; and Olliff v. State, 161 Texas Cr. Rep. 336, 276 S.W. 2d 839.

In the Plair case, supra, it was held reversible error to refuse the request to interrogate the jurors individually as to their views concerning the suspended-sentence law and whether they objected to giving application thereof in a proper case.

In the Pendergrass case, a liquor case, it was pointed out that the accused was entitled to inquire of the members of the jury panel whether they were prohibitionists.

In the Reich and Belcher cases, supra, it was held reversible error to refuse to permit the accused to inquire of the jurors whether they were members of the Ku Klux Klan.

In the Olliff case it was held that the state was authorized, over the objection of the accused, to inquire for the purpose of exercising its peremptory challenges if the jurors or any member of their immediate family or any close friends were members of the religious society known as Jehovah's Witnesses.

The holding in the cases cited and discussed is based upon the proposition that in order to intelligently exercise their peremptory challenges both the one accused of crime and the state have the right to reasonably examine the jurors to that end.

In its brief, the state challenges consideration of such question and of the bills of exception in that it was not shown what the answers of the jurors would have been to the question desired to be propounded—that is, whether the jurors did or did not feel that it was morally wrong for a person to have alcoholic beverages for his own use.

Obviously, the fact that the jurors were not permitted to be asked—much less, to answer—the question precludes knowledge on the part of the appellant as to their answers.

Moreover, if appellant knew how the jury would have answered the question, he possessed the knowledge which was sought to be obtained.

Here, it is immaterial how the jurors would have answered the question, for whatever their answers, the appellant was

entitled to know the answers in order to enable him to exercise his peremptory challenges. If a juror answered that he felt it was morally wrong for a person to have alcoholic beverages for his own use, appellant might want to exercise a peremptory challenge on that juror; on the other hand, if a juror answered that he did not feel that it was morally wrong for one to possess intoxicating liquor for his own use, the appellant might want to be sure that he kept that juror on the jury.

As pointed out, the action of the trial court in refusing to permit the interrogation of the jury panel constitutes a denial to this appellant of a valuable and constitutional right in the trial of this case which requires a reversal of the conviction.

It must be remembered that it was appellant's sole defense that he possessed the liquor for his own use, which the law authorized him to do. Upon its face, the question sought to be asked the jurors was pertinent to the appellant's defense.

The judgment is reversed and the cause remanded.