**B.J. FRANKLIN, Appellant,**

v.

**The STATE of TEXAS.**

No. 1481–00.

Court of Criminal Appeals of Texas.

June 30, 2004.

Craig L. Henry, Texarkana, for appellant.

Betty Marshall, Assistant State's Prosecuting Attorney, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

KEASLER, J., delivered the opinion of the Court, in which PRICE, JOHNSON, HERVEY, and HOLCOMB, JJ., joined.

We granted review in this case to determine whether the Court of Appeals erred in applying a constitutional harm analysis to the trial court's denial of a mistrial after one of the jurors revealed during trial that she knew the victim. We conclude that it did not.

### Facts

During voir dire at B.J. Franklin's trial, defense counsel asked the veniremembers if they knew any of the participants in the trial. None of the jurors indicated that they knew the participants. But when the State called its first witness—the victim—to the stand, Juror Spradlin notified the judge that she knew the victim because Spradlin was the assistant leader of the victim's girl scout troop and that her daughter was also in that troop. Spradlin told the judge that she had not recognized the victim's name during voir dire but recognized the victim when she saw her at trial. The trial judge asked Spradlin if she could listen to the evidence in the case and base her judgment just on what she heard from the stand. Spradlin stated that she could.

Defense counsel moved for a mistrial, stating that if he had known about the relationship between Spradlin and the victim, he would have exercised a peremptory challenge against Spradlin. Defense counsel also requested to ask Spradlin some additional questions about her relationship with the victim. When the trial judge refused to allow additional questioning, defense counsel objected that his client's due process rights were being violated. He stated that he would have asked Spradlin about her relationship with the victim, how long the relationship lasted, whether or not she could set aside that relationship in deciding the case, and whether she would give more or less credence to the victim's testimony and truthfulness due to the relationship. Defense counsel stated that the judge was preventing him from developing any testimony regarding potential biases. The judge overruled defense counsel's objections and denied the motion for mistrial.

### Procedural History

Franklin was convicted of aggravated sexual assault of a child, and the jury sentenced him to life in prison. Franklin appealed, arguing that the trial court erred in denying the motion for mistrial "based upon a juror's failure to accurately answer questions during voir dire and also because he was unable to intelligently exercise his peremptory strikes as a result of that fail-

ure."[1] The Sixth Court of Appeals affirmed his conviction, finding that although the trial court erred in refusing to permit further questioning of the juror, Franklin failed to preserve error because he did not request to make a bill of exceptions "that would have explored the relationship between the juror and the victim, thus providing information from which [the Court of Appeals] could assess whether the information was truly material."[2]

We granted Franklin's petition for discretionary review, which claimed along with three other grounds for review that the information Spradlin withheld was material and that he had preserved the issue for review. We concluded that Franklin had preserved error and that the information withheld by Spradlin was material.[3] We remanded the cause to the Court of Appeals to conduct a harm analysis.[4]

On remand, the Court of Appeals reversed Franklin's conviction. It determined that the error was of a constitutional dimension subject to harm analysis under Rule 44.2(a).[5] The Court of Appeals found that Juror Spradlin's failure to accurately answer counsel's voir dire questions prevented him from intelligently exercising peremptory strikes or from requesting a challenge for cause.[6] It reasoned that "a defendant's constitutional right to counsel requires that counsel be permitted to question the jury panel in order to intelligently exercise peremptory challenges," so Spradlin's withholding of material information was of constitutional dimension. And because the trial judge

refused to admit information that would have permitted the Court of Appeals to "apply a harm analysis to the juror's failure to answer counsel's voir dire questions accurately," it could not determine beyond a reasonable doubt that the error did not contribute to Franklin's conviction.[7]

We then granted the State's petition for discretionary review, which contends that the Court of Appeals erred in analyzing the improper limitation of defense questioning for harm under Rule 44.2(a) of the Texas Rules of Appellate Procedure. The State also argues that the Court of Appeals erred in holding that the improper limitation of defense counsel questioning in this case was harmful where the record does not show that the jury was not fair and impartial.

## Analysis

■ The State characterizes the error at issue here as follows: "Is there a constitutional right for counsel to ask questions that are relevant only the to the exercise of peremptory challenges?" The Court of Appeals rejected the characterization of the issue in those terms,[8] as do we. The error at issue here is the trial judge's denial of a mistrial when, after the trial began, Juror Spradlin revealed that she knew the victim. The trial judge's refusal to allow defense counsel to ask Juror Spradlin questions about her relationship with the victim is considered in the harm analysis, but it is not primarily the error in question. Because the jury had been sworn and the trial had begun, the appel-

---

1. *Franklin v. State*, 986 S.W.2d 349, 352 (Tex. App.-Texarkana 1999).

2. *Id.* at 354–55.

3. *Franklin v. State*, 12 S.W.3d 473, 479 (Tex. Crim.App.2000).

4. *Id.*

5. *Franklin v. State*, 23 S.W.3d 81, 83 (Tex. App.-Texarkana 2000); Tex.R.App. P. 44.2(a).

6. *Franklin*, 23 S.W.3d at 83.

7. *Id.*

8. *Id.* at 82–83.

lant's only remedy was a mistrial; defense counsel could not have moved to challenge the juror for cause or to peremptorily strike the juror. So, the issue here is what standard of harm should be applied to the trial judge's denial of a mistrial based on the juror's withholding of material information.

Under Texas Rule of Appellate Procedure 44.2, the standard of review for errors of a constitutional dimension differs from the standard for other errors.[9] The rule provides that:

> (a) *Constitutional error.* If the record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

> (b) *Other errors.* Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.[10]

Was a constitutional right affected by the juror's withholding of material information during voir dire and the judge's subsequent denial of a mistrial, compounded by the trial court's refusal to allow defense counsel to ask questions to develop a record of actual bias or prejudice? We have said before that "[c]onstitutional provisions bear on the selection of a jury for the trial of a criminal case."[11] And while not every error in the selection of a jury violates the constitutional right of a trial by an impartial jury,[12] we conclude that the error in this case did violate that right.

■ The Sixth Amendment guarantees the right to a trial before an impartial jury.[13] Part of the constitutional guarantee of the right to an impartial jury includes adequate voir dire to identify unqualified jurors.[14] And we have consistently held that essential to the Sixth Amendment guarantees of the assistance of counsel and trial before an impartial jury "is the right to question veniremembers in order to intelligently exercise peremptory challenges and challenges for cause."[15] In *Salazar v. State*, we held that "where a juror withholds material information during the voir dire process, the parties are denied the opportunity to exercise their challenges, thus hampering their selection of a disinterested and impartial jury."[16] We also found "[t]hat a juror will state that the fact that he withheld information will not affect his verdict is not disposi-

9. Tex.R.App. P. 44.2.

10. *Id.*

11. *Jones v. State,* 982 S.W.2d 386, 391 (Tex.Crim.App.1998).

12. *Id.*

13. U.S. Const. amend. VI.

14. *Morgan v. Illinois,* 504 U.S. 719, 729, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992).

15. *Raby v. State,* 970 S.W.2d 1, 10 (Tex.Crim.App.1998); *Linnell v. State,* 935 S.W.2d 426, 428 (Tex.Crim.App.1996) (citing *Nunfio v.* *State,* 808 S.W.2d 482, 485 (Tex.Crim.App.1991)); *Dinkins v. State,* 894 S.W.2d 330, 344–345 (Tex.Crim.App.1995); *Burkett v. State,* 516 S.W.2d 147, 148 (Tex.Crim.App.1974); *Hernandez v. State,* 508 S.W.2d 853, 854 (Tex.Crim.App.1974); *McCarter v. State,* 837 S.W.2d 117, 119 (Tex.Crim.App.1992); *Naugle v. State,* 118 Tex.Crim. 566, 568, 40 S.W.2d 92, 94 (1931); *see also Janecka v. State,* 937 S.W.2d 456, 471 (Tex.Crim.App.1996); *Smith v. State,* 676 S.W.2d 379, 384 (Tex.Crim.App.1984); *Mathis v. State,* 167 Tex.Crim. 627, 628, 322 S.W.2d 629, 631 (1959).

16. *Salazar v. State,* 562 S.W.2d 480, 482 (Tex.Crim.App.1978).

tive of the issue where the information is material and therefore likely to affect the juror's verdict." [17] The fact that the juror did not intend to intentionally withhold information "is largely irrelevant when considering the materiality of information withheld." [18]

Here, Juror Spradlin withheld material information—that she was the victim's assistant Girl Scout troop leader, and that her daughter was also in the same Girl Scout troop as the victim—that prevented Franklin not only from intelligently exercising his peremptory challenges but from exercising a challenge for cause as well. And, under *Salazar*, Spradlin's statement to the trial judge that she could consider the evidence and base her decision on the evidence does not mean that Franklin was not deprived of an impartial jury.[19] The trial judge, informed of the relationship between Spradlin and the victim, refused to grant a mistrial and denied Franklin the opportunity to discover whether the relationship affected Franklin's right to a trial by an impartial jury.

And the error did not end there. The trial judge also deprived Franklin of the ability to develop evidence of bias or prejudice on the record. In this case, defense counsel told the court:

> Had I been allowed to ask questions, I would have asked questions concerning the nature of the relationship with [the victim], how long it had lasted, whether or not she could set aside any of her relationship with [the victim], in sitting in judgment in this particular case, or whether she would tend to give more credence or less credence to [the vic-

tim]'s testimony and truthfulness due to that relationship.

Counsel explained that these questions were relevant to Spradlin's "potential biases" and would have uncovered information relevant to a challenge for cause. But the trial court refused to allow counsel to ask these questions, which we interpreted as "a direct order not to ask the questions." [20] The trial judge's refusal to allow defense counsel to ask Juror Spradlin questions regarding the nature and extent of the relationship deprived Franklin of the ability to show actual bias or prejudice. We hesitate to hold Franklin to a burden of showing actual bias or prejudice when the trial judge denied him the ability to develop evidence of actual bias or prejudice on the record. We believe that all of these factors together—Juror Spradlin's failure to reveal her relationship to the victim, the judge's denial of a mistrial, and the trial judge's refusal to allow defense counsel to question Spradlin about her relationship to the victim—affected Franklin's right to a trial by an impartial jury. So, we conclude that the Court of Appeals properly applied the constitutional standard of harm under Rule 44.2(a).

 Judge Cochran's dissent argues that we should apply the federal standard that Franklin must show that Juror Spradlin had actual bias. Under the federal standard, the defendant must not only show that the juror failed to provide an honest answer to a material question during voir dire but also that a correct response would have provided the basis for a challenge for cause.[21] What Judge Cochran advocates is not and has never been the standard in Texas. Under Texas law, the defendant

17. *Id.*

18. *Franklin,* 12 S.W.3d at 478.

19. *See Salazar,* 562 S.W.2d at 482.

20. *Franklin,* 12 S.W.3d at 477.

21. *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984).

must show that the juror withheld material information during voir dire, and the information is withheld despite due diligence exercised by the defendant.[22] So, "[i]t is not necessary that the concealed information show actual bias; just that it has a tendency to show bias."[23] The fact that Spradlin had a relationship with the victim, one that many people would consider almost a parental role, certainly has a tendency to show bias.

The State argues that, by analyzing the error for harm under Rule 44.2(a), the Court of Appeals has issued an opinion that conflicts with our reasoning in *Jones v. State*.[24] In *Jones*, we found that an error in granting the State's challenge for cause was not of a constitutional dimension.[25] We noted that "while it is true, as appellant argues, that the Constitution guarantees to an accused the right to a speedy trial by an impartial jury, it does not follow that the rejection of [allegedly] unqualified persons for insufficient cause would deprive appellant of that right."[26] Significant in our decision was that "no claim [was] made that the jury, as finally constituted, was biased or prejudiced; or that appellant was deprived of a trial by an impartial jury."[27] We stated that "a defendant has no right that any particular individual serve on the jury. The defendant's only substantial right is that the jurors who do serve be qualified."[28] But here, Franklin's claims stem from the trial court's denial of a mistrial based on Juror Spradlin's revelation during trial that she knew the victim and that this deprived him of a trial by an impartial jury. We find that the State's reliance on *Jones* is misplaced.

This case is also distinguishable from *Johnson v. State*,[29] where we held that the erroneous denial of a challenge for cause is subject to a harm analysis under Rule 44.2(b).[30] As we noted in *Taylor v. State*, when a defendant is prevented from questioning the venire, he is prevented from obtaining information, which implicates constitutional protections.[31] But an erroneous denial of a challenge for cause does not prevent the defendant from obtaining information; the defendant has elicited information from the jury with which he can intelligently exercise his challenges for cause or peremptory challenges. Here, Franklin never had the opportunity to challenge Spradlin for cause or to strike her based on her relationship with the victim, and this implicated his constitutional right to a trial by an impartial jury. Because the erroneous denial of a challenge for cause is not at issue here, we are not bound to apply the standard of harm associated with that error.

The Court of Appeals found that because "a defendant's constitutional right to counsel requires that counsel be permitted to question the members of the jury panel in order to intelligently exercise perempto-

22. *See Jones v. State*, 596 S.W.2d 134, 137 (Tex.Crim.App.1980).

23. Robert G. Loewy, Note: *When Jurors Lie: Differing Standards for New Trials*, 22 Am. J.Crim. L. 733, 743 (1995).

24. *Jones v. State*, 982 S.W.2d 386 (Tex.Crim. App.1998).

25. *Id.* at 391–92.

26. *Id.* at 391.

27. *Id.*

28. *Id.* at 393.

29. *Johnson v. State*, 43 S.W.3d 1 (Tex.Crim. App.2001).

30. *Id.* at 2; Tex.R.App. P. 44.2(b).

31. *See Taylor v. State*, 109 S.W.3d 443, 451–52 (Tex.Crim.App.2003).

ry challenges," the error involved in this case was of constitutional dimension.[32] We have held that Article I, § 10, of the Texas Constitution guarantees the right to counsel, which includes the right of counsel to question members of the venire panel in order to intelligently exercise peremptory challenges.[33] But regardless of whether that type of error · occurred, we believe that Juror Spradlin's withholding of material information, the judge's denial of a mistrial, and the judge's refusal to allow defense counsel to ask Spradlin additional questions adversely affected Franklin's right to a fair and impartial trial. Because we conclude that the trial court's failure to grant a mistrial after Spradlin revealed that she withheld material information is constitutional error, we need not address whether the error implicated Franklin's right to counsel. So we agree with the Court of Appeals that the proper standard is the constitutional standard, but for a different reason.

Judge Keller's dissent argues that our harm analysis in this case conflicts with our recent decision in *Hawkins v. State*.[34] In *Hawkins*, we stated that whether a judge's failure to grant a mistrial constitutes error inherently involves conducting a harm analysis.[35] We said that determining whether there is error involves determining whether the trial judge made a mistake.[36] But here, the issue is not whether the judge made a mistake. We already concluded in *Franklin I* that the trial judge did make a mistake.[37] And despite the various characterizations of that mistake by the parties and the Court of Appeals, the trial judge's only remedy to correct the error was to grant a mistrial, which he did not do. So, the only issue before us now is whether the Court of Appeals used the proper standard of harm in evaluating that error. Our analysis therefore is not at odds with *Hawkins*.

Judge Keller's dissent also asserts that our "only real argument for finding a violation of the right to an impartial jury is that there does not exist enough information to determine whether the juror is biased" and that we do not "explain why, *from a constitutional perspective*, it is not enough that the trial court conducted its own inquiry."[38] She states that there was not any evidence in the record that Juror Spradlin was biased, and in fact that there was evidence that Juror Spradlin was not biased based on her responses to the trial judge's questioning.[39] As we stated before, the issue before us is not whether the trial judge's ruling was error, but what standard of harm to apply to that error. And as we noted in response to Judge Cochran's dissent, the defendant does not have to show evidence of actual bias; the defendant need only show that the juror withheld material information despite the defendant's due diligence in eliciting that information.[40]

Judge Keller further states that if we are "contending that there is a constitutional basis for requiring a trial court to allow the *parties* to question the juror,

32. *Franklin*, 23 S.W.3d at 83.

33. *Howard v. State*, 941 S.W.2d 102, 108 (Tex. Crim.App.1996).

34. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex.Crim.App.2004).

35. *Id.*

36. *Id.*

37. *Franklin v. State*, 12 S.W.3d 473, 478–79 (Tex.Crim.App.2000).

38. *Post,* op. at 361.

39. *Id.* at 361.

40. *See Jones v. State*, 596 S.W.2d 134, 137 (Tex.Crim.App.1980).

[we] have not explained what constitutional provision imposes such a requirement or why it does." [41] But we do not hold here that Franklin had a constitutional right to ask the juror additional questions during trial. What we do hold is that because Franklin was unable to ask those questions during voir dire in order to intelligently exercise his strikes based on that information, he was denied the right to a fair and impartial jury. As we stated before, the fact that the judge would not allow Franklin to ask the juror additional questions at trial compounded the situation since he could not then affirmatively get any evidence of bias on the record.

■ In its second ground for review, the State argues that the Court of Appeals erred in finding harmful error where the record does not show that the jury was not fair and impartial. The State bases its argument on the premise that the proper standard for evaluating the harm is under Rule 44.2(b), and because Franklin was not denied a fair and impartial jury, the error is harmless. But under Rule 44.2(a), the proper standard of harm in this case, "the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." [42] The Court of Appeals did not have to find that the jury was not fair and impartial. Instead, the Court of Appeals was required to reverse the conviction unless it determined beyond a reasonable doubt that the trial court's denial of a mistrial after Juror Spradlin revealed that she knew the victim did not contribute to Franklin's conviction or punishment. The Court of Appeals in this case found that because the trial court "refused to admit the information that would have permitted [it] to apply a harm analysis to the juror's failure to answer counsel's voir dire questions accurately," there was an "absence of evidence that would allow [it] to determine beyond a reasonable doubt that the error did not contribute to the conviction." [43] The Court of Appeals properly applied the standard of harm in this case.

### Conclusion

We find that the Court of Appeals did not err in analyzing the trial judge's denial of a mistrial based on a juror's withholding of material information under Rule 44.2(a). [44] The Court of Appeals' judgment is affirmed.

WOMACK, J., concurred without opinion.

KELLER, P.J., filed a dissenting opinion.

COCHRAN, J., filed a dissenting opinion in which MEYERS, J., joined.

KELLER, P.J., dissenting.

The Court characterizes the issue as "what standard of harm should be applied to the trial judge's denial of a mistrial" based on the juror's withholding of material information. [1] But as we recently explained in *Hawkins v. State*, the question is not whether the defendant was harmed by the court's denial of a mistrial, but whether the trial court erred in the first place by refusing to grant a mistrial. [2] The harm analysis is built into the determination of whether the trial court abused its

---

**41.** *Post*, op. at 361.

**42.** Tex.R.App. P. 44.2(a).

**43.** *Franklin*, 23 S.W.3d at 83.

**44.** Tex.R.App. P. 44.2(a).

**1.** Court's op. at 361.

**2.** 135 S.W.3d at 76–77.

discretion by denying a mistrial.[3] The Court's harm analysis is, therefore, directly at odds with our recent holding in *Hawkins*.[4]

The Court contends that "[w]e already concluded in *Franklin I*[5] that the trial judge did make a mistake" and therefore the only issue before us is the proper standard of harm.[6] But *Franklin I* did not in fact determine that the trial judge committed error in denying the request for a *mistrial*. Rather *Franklin I* agreed with the Court of Appeals's determination that the trial court erred in refusing to permit defense questioning of the juror.[7] The intermediate appellate court declined to reverse on the basis of that alleged error because it believed the error was not preserved[8] and, as a consequence, that it was impossible to determine whether the new information was "material."[9] *Franklin I* disagreed with those determinations—holding that appellant had preserved his complaint[10] and that the new information was indeed "material."[11] *Franklin I* did not, and could not have, addressed whether the trial court made a mistake in denying the *mistrial* because the Court of Appeals never addressed whether the trial court erred in that regard.

On remand from *Franklin I*, the Court of Appeals confused the issue of what error was being addressed. That court indicated that the error was not simply the refusal to permit questioning at trial but also somehow involved counsel's inability to exercise for cause and peremptory strikes at voir dire:

> The State argues that the error before this Court is solely the trial court's refusal to permit counsel to question the juror. This view is not supported either by our initial opinion or by the opinion of the Court of Criminal Appeals. In the Court of Criminal Appeal's opinion, it first determined that error had been preserved for review—that error being the refusal to permit questioning of the juror. The Court of Criminal Appeals then discussed the question of whether the information withheld by the juror *during voir dire* was material. If that information was material, then counsel was unable, through no fault of his own, to intelligently exercise his peremptory strikes or to request a strike for cause on this juror. The Sixth Amendment guarantees the "assistance of counsel" and a trial before "an impartial jury." Part of this constitutional guarantee is an adequate voir dire to identify unqualified jurors. Essential to this guarantee is the right to question venire members in order to intelligently exercise peremptory challenges and challenges for cause. In other words, a defendant's constitutional right to counsel requires that counsel be permitted to question the members of the jury panel in order

3. *Id.* at 77.

4. *Id.*

5. *Franklin v. State*, 12 S.W.3d 473 (Tex.Crim. App.2000).

6. Court's op. at 356–57.

7. *Franklin*, 12 S.W.3d at 479 ("The trial court erred in denying appellant the opportunity to

ask questions of Juror Spradlin."); *see also Franklin v. State*, 986 S.W.2d 349, 353 (Tex. App.-Texarkana 1999).

8. *Franklin*, 986 S.W.2d at 353–354.

9. *Id.* at 354–355.

10. *Franklin*, 12 S.W.3d at 477.

11. *Id.* at 477–478.

to intelligently exercise peremptory challenges.[12]

Although the Court of Appeals contended that its more expansive view of the nature of the error was supported by its own and our opinions, as discussed above, neither of those previous opinions isolated any error other than the refusal to permit questioning at trial. The lower court apparently interpreted the "materiality" discussion as invoking its more expansive view of error, but the lower court's prior opinion had in fact held that materiality could not be determined due to an inadequate record,[13] and *Franklin I*'s discussion of materiality related to our holding that the trial court erred in refusing to permit questioning.[14]

The upshot of all this is that the exact identity of the error at issue remains unresolved. Originally, the isolated error was the refusal to permit the defense to question the juror at trial. On remand, the Court of Appeals suggested that the error was the deprivation of appellant's right to intelligently exercise peremptory and for cause challenges. For the first time, the Court characterizes the error as the failure to grant a mistrial. The Court may be correct in recasting the error issue at this late stage, just as we did in *Hawkins*, but then the remaining discussion of error and harm must be recast as well. It is inconsistent to recast the error for the first time and then claim that the error issue was resolved in a prior decision.

And the Court's failure to recast the issues under *Hawkins* creates problems with its analysis regarding which harm standard to apply. The Court suggests that a constitutional standard of harm applies in the present context because appellant was unable to ask questions in voir dire in order to intelligently exercise for cause and peremptory challenges, and this denied him the right to trial by a fair and impartial jury. But the right to intelligently exercise challenges is a separate right from the right to an impartial jury. I do not see any necessary connection between the two.

If the juror were biased and could not set that bias aside, then the right to an impartial jury would be undermined. But whether appellant would have exercised a peremptory challenge, or raised a challenge for cause, do not by themselves establish that the juror in question was biased. Nor was there any evidence in this record that she was biased. In fact, there was evidence, from the juror's response to the trial court's questioning, that she was *not* biased. The Court does not adequately explain why we should override the trial court's determination that the juror was not biased when there is evidence in the record to support that ruling. It is true that we stated in *Salazar* that a juror's statement that the information withheld would not affect his verdict is not dispositive when the information is material.[15] But such a statement is at least questionable in light of much more recent pronouncements from this Court upholding a trial court's ruling regarding a juror's ability to serve impartially on the case when that ruling is supported by the record.[16]

Moreover, in *Salazar*, upon which the Court relies, it is clear that the juror in-

12. *Franklin v. State*, 23 S.W.3d 81, 83 (Tex. App.-Texarkana 2000) (emphasis in original; internal citations omitted).

13. *See* above discussion.

14. 12 S.W.3d at 478–479.

15. *Id.* at 482.

16. *Quinn v. State*, 958 S.W.2d 395, 402 (Tex. Crim.App.1997); *see also Hughes v. State*, 24 S.W.3d 833, 842 (Tex.Crim.App.2000).

tentionally withheld the information.[17] In the case at bar, however, the juror did not intentionally withhold the information.[18] In *Franklin I,* we held that the good faith of the juror is largely irrelevant when considering the materiality of the information withheld.[19] But while good faith may be irrelevant to the materiality of the information, it should be relevant to whether the trial court is free to believe the juror when she says that the information will not affect her deliberations.

The Court's only real argument for finding a violation of the right to an impartial jury is that there does not exist enough information to determine whether the juror is biased. But the Court does not explain how it arrives at that conclusion. The trial court questioned the juror and received her verbal assurance of impartiality. The Court has not explained how the trial court's questioning was deficient. The Court says that appellant should not be held to the burden of proving bias or prejudice when he was not allowed to ask questions, but the Court does not explain why, *from a constitutional perspective,* it is not enough that the trial court conducted its own inquiry. In fact, that's what happened in *Salazar:* the trial court conducted its own inquiry without the assistance of the parties.[20] If the Court is contending that there is a constitutional basis for requiring a trial court to allow the *parties* to question the juror, it has not explained what constitutional provision imposes such a requirement or why it does.

Arguably, a right of defense counsel to question the juror stems from the right to make a bill of exceptions, but that right appears to stem from common law and court rules rather than the United States or Texas constitutions.[21]

Perhaps the Court is echoing the Court of Appeals's conclusion that the error in this case is the deprivation of the intelligent use of strikes. If that were the error, however, the logical place for that error to have occurred would be during voir dire. But the trial court committed no such error in voir dire. To find such an error in voir dire, we would have to make an exception to the general principle, discussed in *Hawkins,* that error occurs only when the trial court makes a mistake and hold that a juror's conduct could, by itself, create error to be complained about on appeal. Moreover, to help appellant in this case, we would have to further hold that such error could occur even when the juror acted in good faith and did not intentionally withhold information. I see no persuasive reason to make such an exception to *Hawkins.*

I respectfully dissent.

COCHRAN, J., dissenting in which MEYERS, J., joined.

I respectfully dissent.

The error that we have already found in this case was the trial court's failure to permit further questioning of juror Spradlin concerning any actual bias she might harbor against appellant. The constitutional question, however, is whether appellant's Sixth Amendment right to trial by an impartial jury was violated. If Ms.

---

17. 562 S.W.2d at 482 ("It is clear that juror Wooley was in violation of his oath when he withheld information during voir dire").

18. *Franklin,* 12 S.W.3d at 478.

19. *Id.*

20. *Salazar v. State,* 562 S.W.2d 480, 481–482 (Tex.Crim.App.1978).

21. *See Spence v. State,* 758 S.W.2d 597, 599–600 (Tex.Crim.App.1988), *cert. denied,* 499 U.S. 932, 111 S.Ct. 1339, 113 L.Ed.2d 271 (1991).

Spradlin was actually biased against appellant, he did not receive his constitutionally guaranteed right to trial by an impartial jury. But if Ms. Spradlin did not harbor any actual bias against appellant, he did receive a constitutionally fair trial by an impartial jury. Under well-established federal precedent, the defendant must show that the juror had an actual bias against him before he is entitled to relief. I would therefore follow federal precedent and abate this case to the trial court to give appellant the opportunity to call Ms. Spradlin and question her about her relationship with C.N.T. If Ms. Spradlin was actually biased against appellant, he has suffered constitutional harm. If she was not biased, appellant was tried by a fair and impartial jury and he has suffered no harm at all, despite the trial court's error.

## I.

During voir dire in this case, the State asked the jury panel if anyone knew C.N.T., the complainant in this aggravated sexual assault of a child trial. No one said they did. Appellant did not inquire further and he did not ask C.N.T. to enter the courtroom or stand up so the jury panel could see her in person. After the jury was empaneled, the State called C.N.T. to the witness stand. As soon as C.N.T. took the witness stand, Juror Spradlin passed a note to the judge stating that she now recognized C.N.T. As we stated in our original opinion in this case:

Apparently, Juror Spradlin had a daughter in the same girl scout troop as C.N.T., and Juror Spradlin was that girl scout troop's assistant leader. She had not recognized the name, but knew C.N.T. when she saw her. The trial court judge asked Juror Spradlin if she could listen to the evidence in the case

and base her judgment just on what she heard from the stand. Juror Spradlin stated that she could.[1]

Appellant's counsel immediately moved for a mistrial. The trial judge refused that request, stating: "I think it was obvious from seeing her that she had no idea who this witness was until she saw her come into the courtroom." Appellant then requested an opportunity to question Ms. Spradlin further about her relationship with C.N.T. Again the trial judge refused: "I'm not going to permit that because you had ample opportunity on voir dire." The State argued that appellant had failed to show any harm because there was no indication that Juror Spradlin would be unfair or partial. Appellant objected again, observing that "[t]he reason that there is no evidence of any potential biases, of course, the Court is preventing me from further developing that testimony from that particular juror once that relationship has been established." Appellant's counsel then set out on the record the questions he would have asked Juror Spradlin about her relationship with C.N.T. had he been permitted to do so. These were all appropriate questions and appellant should have been allowed to ask them.

The trial court erred in refusing to allow further inquiry into the juror's potential bias. In our prior opinion, we held that appellant properly preserved this error and remanded the case for the court of appeals to conduct a harm analysis.[2] On remand, the court of appeals held that this was constitutional error because appellant was deprived of his right to "question the members of the jury panel in order to intelligently exercise peremptory chal-

---

1. *Franklin v. State,* 12 S.W.3d 473, 476 (Tex. Crim.App.2000).

2. *Id.* at 479.

lenges." [3] This seems a peculiar conclusion because appellant could have questioned Ms. Spradlin during voir dire until the cows came home, but until Ms. Spradlin saw C.N.T. she would not have realized that she knew her.

It seems to me that the problem here has nothing to do with voir dire and nothing to do with the exercise of peremptory challenges. Voir dire was over when this problem surfaced. Instead, the issue is whether a biased juror sat on appellant's jury. This scenario and the constitutional issue it presents are very familiar to the federal courts. Therefore, I think that we should follow federal precedent in dealing with this constitutional issue. Under federal precedent, the proper remedy is to

remand the case to the trial court for a hearing.[4]

## II.

The Sixth Amendment guarantees the accused the right to a trial by an impartial jury.[5] This right to trial by an impartial jury lies at the heart of due process.[6] The Constitution provides no specific tests of juror partiality or bias, but the United States Supreme Court has stated that "[t]he bias of a juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as [a] matter of law." [7]

Although there are a few exceptional circumstances in which "implied bias" may be presumed as a matter of law,[8] normally

---

**3.** *Franklin v. State,* 23 S.W.3d 81, 83 (Tex. App.-Texarkana 2000).

**4.** *Smith v. Phillips,* 455 U.S. 209, 215, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) ("[t]his Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias"); *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 551–52 & n. 3, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984) (stating that proper resolution of whether juror's "unrevealed information" during voir dire showed juror bias is to remand case to district court to conduct a hearing to decide that factual question); *Remmer v. United States,* 347 U.S. 227, 230, 74 S.Ct. 450, 98 L.Ed. 654 (1954) (remanding case to district court to determine whether attempted bribery of juror influenced him and made him prejudiced); *Solis v. Cockrell,* 342 F.3d 392, 399 (5th Cir.2003) (postconviction hearing conducted by trial court which turned up no prejudice toward defendant by juror protected habeas applicant's right to trial by impartial jury); *Tinsley v. Borg,* 895 F.2d 520, 524–26 (9th Cir.1990) (citing *Phillips* and noting that post-trial hearing is appropriate mechanism to resolve constitutional claims of juror bias when juror fails to disclose material information during voir dire).

**5.** U.S. Const. amend. VI ("[i]n all criminal prosecutions, the accused shall enjoy the right

to a speedy and public trial, by an impartial jury").

**6.** *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961) ("the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors").

**7.** *United States v. Wood,* 299 U.S. 123, 134, 57 S.Ct. 177, 81 L.Ed. 78 (1936).

**8.** *See Smith v. Phillips,* 455 U.S. 209, 222–23, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (O'Connor, J., concurring) (noting that "there are some extreme situations that would justify a finding of implied bias," including "a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction"); *see also Solis v. Cockrell,* 342 F.3d 392, 395–98 (5th Cir.2003) (citing cases and analyzing doctrine of "implied" or "presumed" juror bias when juror fails to disclose material information during voir dire; rejecting habeas applicant's claim of implied bias when juror failed to disclose that he lived not more than two blocks from defendant, had known him and his family for more than twenty years, and knew that defendant and his brothers "break into people's homes"). In *Solis,* the Fifth Circuit noted

a party seeking a new trial (or, as in this case, a mistrial) must show a juror's "actual bias."[9]

To obtain a new trial for actual juror bias, a defendant must show: 1) that a juror failed to answer honestly a material question during voir dire; and 2) that a correct response would have provided the basis for a challenge for cause.[10] This is the test applied when a juror *intentionally* conceals information.[11] The Supreme Court explained in *McDonough* that "[t]he motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial."[12] Inaccurate responses to voir dire questions are excused when caused by inattention or when a query does not elicit the specific information relevant to the juror's possible disqualification.[13] Even when a juror's failure to disclose information on voir dire

is dishonest rather than mistaken, "his behavior is not a basis for reversal unless the dishonesty appears to be rooted in bias or prejudice."[14]

Under the Supreme Court's constitutional standard:

A juror ... need not be disqualified merely because he or she knows the defendant or has some knowledge about the case. A defendant must show that the knowledge somehow impaired—or had the ineluctable tendency to impair—the juror's neutrality. That is to say, the defendant must show actual, or at least likely, prejudice stemming from the participation of the allegedly biased juror.[15]

The mere fact that a juror was the former "paramour" of the defendant's son was insufficient to show actual prejudice;[16] the fact that a juror was the friend of the murder victim was insufficient;[17] the fact

that the Supreme Court has never explicitly upheld a claim of implied bias, although it may have implicitly done so. *Id.* at 395 (discussing *Leonard v. United States*, 378 U.S. 544, 84 S.Ct. 1696, 12 L.Ed.2d 1028 (1964)).

9. Appellant's argument suggests that this is an instance of "implied" or "presumed" juror bias. He states: "Except immediate family members, one could hardly imagine a stronger relationship than that which exists between a girl scout and her troop leader." I cannot accept that premise, but even so, the record in this case indicates that Ms. Spradlin did not have a close relationship with C.N.T. because she did not even recognize her name. Appellant provides no legal support for his argument that being a crime victim's assistant girl scout leader raises "implied" or "presumed" bias.

10. *McDonough*, 464 U.S. at 556, 104 S.Ct. 845; *United States v. Bishop*, 264 F.3d 535, 554 (2001) ("moving party must demonstrate that a juror failed to answer a material voir dire question honestly, and that a correct response would have been a valid basis for a challenge for cause"); *United States v. Wilson*, 116 F.3d 1066, 1086 (5th Cir.1997)

("[g]enerally, to obtain a new trial for jury bias, a party must demonstrate: (1) that a juror failed to answer honestly a material question during *voir dire*, and (2) that a correct response would have provided the basis for a successful challenge for cause"); *Dennis v. Mitchell*, 354 F.3d 511, 520–21 (6th Cir. 2003) (setting out *McDonough* test).

11. *McDonough*, 464 U.S. at 556, 104 S.Ct. 845; *Dennis v. Mitchell*, 354 F.3d at 520.

12. *McDonough*, 464 U.S. at 556, 104 S.Ct. 845.

13. *Bishop*, 264 F.3d at 555.

14. *Id.*

15. *Neron v. Tierney*, 841 F.2d 1197, 1206 (1st Cir.1988).

16. *Id.* at 1203.

17. *Wilson*, 116 F.3d at 1086; *see also Montoya v. Scott*, 65 F.3d 405, 420 (5th Cir.1995) (juror who did not respond to voir dire question of whether she knew victim when in fact

that one defendant and a juror had previously had a disagreement over a bill was insufficient;[18] and the fact that a juror, although questioned repeatedly, failed to disclose that she had been previously convicted of theft and sat on a trial involving federal income tax fraud, was insufficient.[19] There are a plethora of federal cases addressing precisely the constitutional issue presented in this case. It seems to me that we should consult those cases before we reverse appellant's conviction on this constitutional basis. As the Supreme Court stated in *McDonough:*

> To invalidate the result of a three-week trial because of a juror's mistaken, though honest response to a question, is to insist on something closer to perfection than our judicial system can be expected to give. A trial represents an important investment of private and social resources, and it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel

lacked an item of information which objectively he should have obtained from a juror on *voir dire* examination.[20]

In this case, there is not a scintilla of suggestion that Ms. Spradlin "withheld" any information. Indeed, the moment she saw C.N.T. in person, she immediately informed the trial judge that she did, in fact, recognize the child, though she had not recognized the name. Surely this is a common phenomenon to us all. To guard against this problem, appellant could easily have asked C.N.T. and all of the witnesses to stand up in the courtroom and then ask the venire members if they recognized any of them. This is frequently done in Texas courtrooms. Appellant should not be punished for his failure to perform this simple voir dire exercise,[21] but neither should he obtain a reversal for that failure. As it stands, there is nothing in this record to suggest that Ms. Spradlin was biased against appellant. The problem in this case is that appellant was prevented from

she did may have been honestly mistaken in her response; nonetheless, mere friendship with victim does not, by itself, constitute juror bias). As the Fifth Circuit noted in *Montoya:*

> We have found no published opinion upholding a challenge for cause based on a venireperson's mere acquaintance with the victim of the crime for which the defendant has been charged, and the Texas Court of Criminal Appeals has squarely held that the mere fact that a juror knows the victim is not sufficient basis for disqualification. *See Anderson v. State,* 633 S.W.2d 851, 853 (Tex.Crim.App.1982). In *Anderson,* the juror was a school teacher at the school where the rape at issue occurred and knew the victim, who attended the school, and several of the State's witnesses, but did not know the defendant. The court stated: "Although such knowledge [of the victim] may be the source of an existing bias, 'the mere fact that a juror knows, or is a neighbor, or an intimate acquaintance of, and on friendly relations with, one of the parties to a suit, is not sufficient basis for disqualification.' "

65 F.3d at 419–20.

18. *United States v. Uribe,* 890 F.2d 554, 561 (1st Cir.1989).

19. *Bishop,* 264 F.3d at 556 (juror offered a "plausible explanation for her failure to answer the juror questionnaire and voir dire inquiries regarding her criminal history accurately").

20. *McDonough,* 464 U.S. at 555, 104 S.Ct. 845.

21. *But see Wilson,* 116 F.3d at 1086 (defendant bears burden of proving that the belated discovery of juror's friendship with the victim was not due to lack of diligence on his part); *cf. Neron,* 841 F.2d at 1202 n. 6 (noting that allegations of juror bias "which are frivolous—that is, entirely conclusory or conjectural, contradicted by the record, inherently incredible, patently false, or obviously inconsequential—do not trigger any duty of inquiry [by the trial court] and do not require that a hearing be held").

**366**

even attempting to explore or establish bias.

Appellant, the court of appeals, and the majority cast this constitutional claim as one involving the right to make intelligent peremptory challenges. But there is no federal constitutional right to peremptory challenges.[22] I believe that when a defendant relies upon the United States Constitution for his claim, we should address his claim under the United States Constitution and the controlling precedent of the United States Supreme Court.[23]

Furthermore, there are numerous federal cases, including *McDonough* itself, addressing the appropriate remedy when the trial court has not provided an adequate forum to develop the factual basis for the claim of a biased juror. That remedy is to remand the case to the trial court to give the defendant an opportunity to establish his claim of a biased juror.[24] I, like the Supreme Court, believe that a trial represents an important investment of private and social resources, an investment that is the main event, not a try-out on the road to appellate speculation about possible juror bias. Appellant is entitled to show actual bias, but we ought not assume it without support in the record.

I respectfully dissent to the majority's failure to follow federal constitutional law and procedure on appellant's federal constitutional claim.

**22.** *Georgia v. McCollum,* 505 U.S. 42, 57, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992) ("it is important to recall that peremptory challenges are not constitutionally protected fundamental rights; rather, they are but one state-created means to the constitutional end of an impartial jury and a fair trial. This Court repeatedly has stated that the right to a peremptory challenge may be withheld altogether without impairing the constitutional guarantee of an impartial jury and a fair trial"); *Frazier v. United States,* 335 U.S. 497, 505, 69 S.Ct. 201, 93 L.Ed. 187 (1948) (stating that the right to peremptory challenges "is given in aid of the party's interest to secure a fair and impartial jury, not for creat-

ing ground to claim partiality which but for its exercise would not exist").

**23.** In *Jones v. State,* 596 S.W.2d 134 (Tex. Crim.App.1980), this Court did not address any question of constitutional error or harm because the defendant failed to ask any specific questions designed to elicit the fact that the juror had once been employed as a jail guard. *Id.* at 136. Because the defendant did not show that the juror intentionally withheld material information, he failed to show any "misconduct that would warrant reversal." *Id.* at 137.

