COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| ROBERTO SILVAS, | § | No. 08-14-00147-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | 120th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20110D02228) |
| | § | |

**O P I N I O N**

A jury found Appellant Roberto Silvas guilty of indecency with a child by sexual contact and aggravated sexual assault of a child and sentenced him to 20 years and 35 years imprisonment, respectively. On appeal, Appellant contends the trial court erred in excluding the testimony of his expert witness. He also contends the trial court erred in denying his motion for mistrial based on a juror's alleged failure to disclose she worked at the Child Advocacy Center, and because an outside influence was improperly brought to bear on the jury. We affirm.

**BACKGROUND**

The charges against Appellant arose from his contact with J.E. when she was eleven years old. Appellant and J.E.'s mother met at a bar where Appellant played in a band. They dated, and Appellant later met her children, including J.E. Eventually, they all came to live together in

Appellant's apartment. At one point, Appellant made the family move out of his apartment after a fight, but they moved back in three months later.

J.E. testified that about a week after they moved back in, Appellant grabbed her buttocks while she was giving him a hug. Later, Appellant touched her inappropriately by putting his hands down her pants and his fingers inside her vagina. Appellant then unzipped his pants and tried to get J.E. to put her hand on his penis. She refused. About three weeks later, J.E. was returning with Appellant from a trip to a convenience store when Appellant stopped the car and tried to force her legs apart.

J.E.'s mother testified that after J.E. told her what Appellant had done, she confronted Appellant, who said he was sorry, he didn't know why he did it, and he knew he was wrong. Appellant testified at trial. Appellant denied that he had ever grabbed J.E.'s buttocks, denied that the incident in his apartment described by J.E. ever happened, and denied that anything improper occurred during the trip to the convenience store. Appellant also denied that any conversation had occurred with J.E.'s mother where he said he was sorry.

## DISCUSSION

### Expert Witness

In Issue One, Appellant contends the trial court erred when it excluded the testimony of his expert witness Judy Ackers. The admissibility of expert testimony is reviewed on appeal for an abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 272 (Tex.Crim.App. 2010).

### *Background*

Joe Zimmerly, a forensic interviewer with the El Paso Child Advocacy Center, [1]

---

[1] Zimmerly testified the Child Advocacy Center is a nonprofit organization that facilitates investigations of physical and sexual abuse of children. The Center houses the Crime Against Children section of the El Paso Police

interviewed J.E. several months after the assault. Appellant offered the video recording of Zimmerly's interview of J.E. into evidence during his cross-examination of J.E. The video was later played to the jury immediately before Zimmerly testified. Zimmerly testified in general terms concerning the interview, including his recollection that J.E. had not contradicted herself during the interview. Zimmerly opined that the existence of minor discrepancies between the video recording and the child's testimony at trial four years later would not mean the child was lying. Zimmerly also discussed a detailed drawing J.E. had made of the layout of the apartment where Appellant had molested her, on the back of which she had written "I hate Bobby."

After the State had rested, defense counsel announced Appellant would call as his first witness his expert, Judy Ackers. The trial court first allowed the parties to voir dire Ackers on her qualifications and proposed testimony. During this voir dire, the trial court interspersed its own questions to Ackers. Among other things, Ackers stated her opinion that Zimmerly's interview of J.E. was "very amateurish, very inconsistent, [and he was] basically leading the child." Ackers admitted during voir dire that while she is a licensed and board-certified professional counselor and psychotherapist who had interviewed over 100 child abuse victims in therapy, she was not a forensic interviewer and was not licensed in forensic work. Accordingly, Appellant offered Judy Ackers as an expert in "child victim interviewing, not forensic interviewing[.]" The trial court ruled Ackers could testify regarding her field of expertise—providing therapy and interviewing children—but did not have sufficient expertise to testify about forensic interviewing in general, nor about Zimmerly's forensic interview in particular. Ultimately, Appellant did not call Ackers

Department, investigators for Child Protective Services, and offices for district and county attorneys. Zimmerly described the Child Advocacy Center as a child-friendly environment where children are brought to be interviewed by Center staff, CPS, and law enforcement. Zimmerly stated he was a neutral fact finder for the Child Advocacy Center and did not work for the police or CPS.

3

as a witness.

Appellant makes a narrow argument on appeal. Appellant argues the trial court abused its discretion because Ackers established her expertise in the area of counseling and child interviewing, and there was no basis to "exclude" Ackers' "expert opinion that Zimmerly's interview techniques employed improper and leading questions and [was] amateurish."[2]

*Analysis*

We conclude the trial court did not abuse its discretion. As the State correctly points out, the trial court did not exclude Ackers' testimony. Rather, the court was not satisfied that Ackers had the experience to testify as an expert about forensic interviewing, and ruled only that it "would not permit her to testify or provide an opinion about forensic interviewing." This was consistent with Appellant's offer of Ackers as an expert in "child victim interviewing, not forensic interviewing[.]" More importantly, the trial court specifically found that Ackers' testimony would be "helpful to a jury," and ruled that "I'll let her testify . . . but as an expertise [sic] in her field, which is, she does have expertise in therapy and interviewing children." In explaining her ruling, the trial court stated that Ackers had the qualifications "to give her opinions about what's better interviewing . . . and I [will] permit that[.]" The court also made clear that Ackers could "talk about her concerns" that she had described in her voir dire testimony. One of the concerns Ackers expressed in voir dire was that Zimmerly's interview of J.E. was "very amateurish, very

---

[2] When asked in voir dire if she would testify about "the truthfulness or untruthfulness of this child in this video," Ackers responded that she would "testify about the [child's] demeanor and my impression." Appellant offered Ackers as an expert witness in part "to give an opinion as to the demeanor of a child and what a typical response is to—what a normal response to a question about rape or sexual abuse would be." At one point in her ruling, the trial court indicated that Ackers would not be allowed to testify whether J.E. was telling the truth nor would she be allowed to imply from J.E.'s demeanor whether J.E. was telling the truth. At other times, however, it appears the trial court would allow some testimony in this regard. In any event, Appellant does not attack this part of the trial court's ruling on appeal, but rather complains only about the exclusion of Ackers' opinion that Zimmerly employed improper and leading questions and that his interview was amateurish.

4

inconsistent, [and he was] basically leading the child," which is the very testimony Appellant claims was erroneously excluded. In sum, the record shows that the trial court was going to allow Ackers to testify about the very subject Appellant contends was excluded.[3] Issue One is overruled.[4]

## Motion for Mistrial

Appellant's second and third issues concern Appellant's contentions that the trial court erroneously denied his motion for mistrial after the trial court informed the parties that she had been informed that a juror allegedly had not disclosed during jury selection that she worked at the Child Advocacy Center.

### *Standard of Review*

A mistrial is an appropriate remedy in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors. *Ocon v. State,* 284 S.W.3d 880, 884 (Tex.Crim.App. 2009); *see also Mendoza v. State*, No. 08-13-00293-CR, 2015 WL 5999596, at *5 (Tex.App. – El Paso Oct. 14, 2015, pet. ref'd) (not designated for publication). We review the denial of a mistrial for an abuse of discretion. *Ocon,* 284 S.W.3d at 884; *Mendoza*, 2015 WL 5999596, at *5. We must uphold the ruling if it was within the zone of reasonable disagreement. *Ocon,* 284 S.W.3d at 884; *Mendoza*, 2015 WL 5999596, at *5. In determining whether a trial court abused its discretion by denying a mistrial, we would balance three factors: (1) the severity of the

---

[3] If Appellant had any doubts about the scope of the trial court's ruling, he should have asked for further clarification; or Appellant should have had Ackers testify, which he declined to do.

[4] Even if the trial court had abused its discretion, we could not determine whether the claimed "exclusion" of Ackers' testimony was harmful, because the record fails to show the basis of Ackers' bare opinion that Zimmerly's interview of J.E. was "very amateurish, very inconsistent, [and he was] basically leading the child." *See Coble,* 330 S.W.3d at 277 n.62 (citing *Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999) ("Although expert opinion testimony often provides valuable evidence in a case, 'it is the basis of the witness's opinion, and not the witness's qualifications or his bare opinions alone, that can settle an issue as a matter of law; a claim will not stand or fall on the mere ipse dixit of a credentialed witness.' ").

misconduct (the magnitude of the prejudicial effect); (2) the effectiveness of the curative measures taken; and (3) the certainty of conviction or the punishment assessed absent the misconduct. *Hawkins v. State,* 135 S.W.3d 72, 77 (Tex.Crim.App. 2004); *Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim.App. 1998); *Mendoza*, 2015 WL 5999596, at \*5.

### *Background*

After the jury had retired to deliberate, the trial court informed the parties that Juror Number 8—Heather Jones, the presiding juror—had called the court reporter and advised her "that one of the jurors works at the Advocacy Center."   The trial court further informed the parties that she had reviewed the juror information forms and that no one seated on the jury had indicated they worked for the Advocacy Center.   The court recalled that during voir dire the parties had questioned the jury panel about involvement with any rape crisis advocacy groups, and that one panel member had indicated that her husband was on the Board of the Child Advocacy Center. The trial court believed this would have prompted any other panel member to "have stood up and informed the parties" of "even a vague involvement" with the Advocacy Center.   The court also informed the parties that the staff of the Advocacy Center was very small and that she did not believe that any of the staff were on the jury.   The court informed the parties that other than its prior admonishment of the jury that the case must be decided on the law and the evidence, the court would not further inquire with the jurors about the information that had been relayed.

Defense counsel then moved for a mistrial stating:

> [W]e're going to be asking for a mistrial, due to an obviously biased juror.   It sounds like she withheld information during the voir dire process, and is becoming an advocate in this jury room because, obviously, she's relaying information to the rest of the jury that she's a member of the Child Advocacy group.   And I believe that the jury is now tainted.   I do not believe Mr. Silvas can receive a fair trial at this point.

6

The trial court denied the motion.

*Analysis*

In Issue Two, Appellant argues that mistrial should have been granted because his ability to select an impartial jury was hindered by a juror withholding information about working at the Child Advocacy Center despite counsel's diligence, thereby violating his federal and state constitutional rights to due process. In particular, Appellant argues that the presiding juror, "Heather Jones . . . did not say anything about her association/employment/relationship with the Child Advocacy Center and Joe Max Zimmerly."

Appellant is correct that if despite the defendant's due diligence, a juror withholds material information during the voir dire process, the parties are denied the opportunity to exercise their challenges, thus hampering their selection of a disinterested and impartial jury, thereby violating the Sixth Amendment guarantees of the assistance of counsel and trial before an impartial jury. *Franklin v. State,* 138 S.W.3d 351, 354-56 (Tex.Crim.App. 2004). Appellant's argument, however, fails for two reasons. First, the record does not show that juror Heather Jones had any association with the Child Advocacy Center. Rather, the record shows only that Heather Jones was the juror who reported "that one of the jurors works at the Advocacy Center." Second, the record does not establish that any juror in fact had any association with the Child Advocacy Center or Zimmerly. The record shows only that Heather Jones told the court reporter that one of the jurors works at the Advocacy Center, and contains no evidence supporting that accusation. Further, the record reveals that after inquiry and reflection, the trial court did not believe that anyone from the staff of the Child Advocacy Center was on the jury.

Put simply, the record before us does not establish that any juror in fact had any association

7

with the Child Advocacy Center or that a juror actually withheld information during the voir dire process. And, Appellant did not attempt to establish during or after trial that a juror had actually withheld information during the voir dire process.[5] Because the record before us does not show that any juror in fact had any association with the Child Advocacy Center or that a juror actually withheld information during the voir dire process, we cannot conclude the trial court abused its discretion in refusing to grant Appellant's motion for mistrial. Issue Two is overruled.

In Issue Three, Appellant contends in a related argument that mistrial should have been granted because the jury panel as a whole was prejudiced by an improper outside influence—the knowledge that a fellow juror worked with Zimmerly, "the State's key witness," thereby violating his federal constitutional right to a fair and impartial jury. We recognize that in some instances, a juror bringing outside information into jury room deliberations can constitute an improper outside influence requiring a new trial. *See, e.g., McQuarrie v. State*, 380 S.W.3d 145, 155 (Tex.Crim.App. 2012) (internet research conducted by a juror about effects of date rape drugs constituted "outside influence" about which defendant should have been permitted to conduct post-trial inquiry, without delving into deliberations, on motion for new trial on charge for sexual assault, to determine whether such influence impacted outcome of case). But, as above, Appellant's contention in Issue Three fails for a total lack of evidence.

Appellant stated in his motion for mistrial that the juror who allegedly withheld information during the voir dire process "is becoming an advocate in this jury room because, obviously, she's relaying information to the rest of the jury that she's a member of the Child

---

[5] Appellant did not complain in his motion for mistrial, nor does he complain on appeal, that the trial court should have made further inquiry into this matter with the jury. And, while Appellant moved for a new trial based on "juror misconduct," he did not attach any evidence to that motion to establish that any juror in fact had any association with the Child Advocacy Center, nor does Appellant complain on appeal that the trial court erred in denying his motion for new trial.

Advocacy group. And I believe that the jury is now tainted." But, the record does not bear out any of these allegations. The record does not show that any juror became "an advocate in [the] jury room," or if any juror relayed any information to the rest of the jury that "she's a member of the Child Advocacy group." The record shows only that the presiding juror believed one of the jurors worked for the Child Advocacy Center, and even then the record fails to show the source of that knowledge. More importantly, the record does not reflect the jury had become "tainted" or in other words that any such influence impacted the outcome of the case. Certainly, based on the state of the record when it denied Appellant's motion for mistrial, the trial court did not abuse its discretion. And, while Appellant moved for a new trial based on "juror misconduct," he did not attach or present any evidence to establish that any juror in fact had any association with the Child Advocacy Center or had relayed that information to the other jurors, or that any such influence impacted the outcome of the case.[6] We therefore conclude the trial court did not abuse its discretion in denying Appellant's motion for mistrial. Issue Three is overruled.

## CONCLUSION

The trial court's judgment is affirmed.


STEVEN L. HUGHES, Justice

October 5, 2016

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

---

[6] As noted above, Appellant does not complain on appeal that the trial court erred in denying his motion for new trial.