Opinion issued March 13, 2003












  






In The
Court of Appeals
For The
First District of Texas




NO. 01-01-00389-CR




DONOVAN KEITH WAPPLER, Appellant

V.

THE STATE OF TEXAS , Appellee




On Appeal from the County Criminal Court at Law No. 5
Harris County, Texas
Trial Court Cause No. 1033687




OPINION ON MOTION FOR REHEARING
          On this day, the Court considered appellant’s motion for rehearing. The
motion is denied. However, we withdraw our opinion of January 9, 2003, and issue
this opinion in its stead.
          A jury convicted appellant, Donovan Keith Wappler, of the misdemeanor
offense of driving while intoxicated, and the trial court, in accordance with an
agreement between appellant and the State, assessed punishment at 42 days in jail.
We affirm.
BACKGROUND
          On December 2, 2000, Mary Chang was on her way from work when she
stopped at a yield sign. Appellant, driving a Ford Taurus, hit her car from the rear. 
Chang got out of her car and saw that appellant was the only person in the Taurus. 
As Chang approached appellant to ask him what had happened, she could smell
alcohol on his breath.
          Chang called 911 from her cell phone and then called her husband. Chang
noticed that appellant was “unbalanced” when he got out of his car, and that he had
to hold onto his car to walk. Chang testified that appellant was “completely drunk.” 
When Chang asked appellant for his insurance information, he handed her three
cards, but he did not say anything. Appellant said that he wanted to go to a gas
station to make a phone call. Chang was afraid that appellant would have an accident
if he left, so she handed him her cell phone. Appellant was unable to dial the phone,
so he handed it back to Chang and she dialed the number for him. While they were
waiting for EMS, appellant got inside the car. Chang noticed that appellant appeared
to be cleaning the inside of his car.
          Chang’s husband, Steve Fargo, arrived at the scene within 10 to 15 minutes
after the accident. Fargo smelled alcohol on appellant’s breath and noticed that
appellant was disoriented and seemed to be “meandering” around. Fargo called the
police from the scene and again told them where the accident was located. Appellant
interrupted and insisted that they were on Highway 249, rather than the Sam Houston
Parkway at Bammel North Houston.
          Harris County Constable Steven Romero arrived at the scene at about 7:50 p.m. 
He noticed that appellant had alcohol on his breath, that his speech was “kind of
slurred,” and that he had bloodshot eyes. Fargo told the officer that he had seen
appellant wiping his dashboard with a rag before Romero arrived. Romero testified
at trial that he told appellant to pick up a rag that was on the ground and that it
smelled like alcohol.
          Romero performed a horizontal gaze nystagmus test, on which appellant
exhibited all six clues.


 He then asked appellant to perform several field sobriety
tests, but appellant refused. Appellant was uncooperative and insisted that he had
done nothing wrong. When appellant refused to put his hands on the car, Romero
grabbed appellant’s sleeve, put his hands on the car, handcuffed him and patted him
down. Romero testified that appellant’s pants were wet and that, after he patted
appellant down, Romero’s hand smelled like urine. Appellant was placed in the back
of the patrol car. Romero gave appellant no statutory warnings at the scene.
          At some point during the investigation, Romero asked appellant whether he had
been drinking. Appellant stated that he had been drinking at a casino in Louisiana,
but that he had taken his last drink two hours earlier.
          Romero took appellant to the police station, where he was read his statutory
rights. Romero offered appellant a breath test, which he refused. Appellant also
refused to perform any field sobriety tests. Appellant’s refusals were videotaped and
showed appellant to be very belligerent.
LIMITATION OF VOIR DIRE
          In point of error one, appellant contends the trial court erred by giving him only
15 minutes to conduct voir dire. Appellant contends that, because of the excessive
time limitation, he was unable to ask relevant questions of the voir dire, including:
(1) whether the venire could consider the full range of punishment; (2) whether any 
venire members were members of Mothers Against Drunk Driving; (3) whether any
of the venire members’ experiences with alcohol would cause them to favor the State;
(4) whether any of the venire members would believe a police officer simply because
of his occupation; (5) whether the venire members could disregard incriminating, but
illegally obtained statements; and (6) whether the venire members would find
appellant guilty simply because he had been in an accident. Appellant argues that,
because he was not able to explore these issues with the venire, he could not
intelligently exercise his peremptory strikes.
          However, the State argues, and we agree, that appellant is estopped from
complaining about any inadequate opportunity to voir dire the venire because he
affirmatively requested that the trial court attempt to seat a panel from the venire. 
The record shows that the venire initially included 20 members. After preliminary
voir dire questions by the court, only 14 venire members remained. The parties then
had 15 minutes each to question the remaining 14 members.
          After the voir dire, an additional three venire members were excused for cause,
bringing the number of remaining venire members to 11. The trial court then
indicated her intention to release the remaining venire members because, once each
side exercised its three peremptory strikes, there would not be enough venire
members remaining to constitute a six person jury. Defense counsel objected to
excusing the venire, arguing that there was “no legal reason” to do so. Defense
counsel believed that a jury could be seated if he and the State exercised a peremptory
strike on the same venire member. After peremptory strikes were exercised, a six
member jury was seated.
          We hold that because he objected to the dismissal of the venire and
affirmatively stated that there “was no legal reason” to dismiss the panel, appellant
is estopped from complaining that he had been given an inadequate amount of time
to voir dire the panel. Appellant affirmatively asked the court to attempt to seat a jury
from this venire, which, according to him, he had not had an adequate opportunity to
voir dire. Had appellant not insisted that the trial court seat a panel from this venire,
the court would have dismissed the allegedly inadequately-questioned panel, and the
trial court’s error in limiting voir dire, if any, would have been cured. Thus, we
believe that by insisting that a jury be seated from this venire, appellant was
affirmatively endorsing this jury. One cannot ask a trial court to act in a specified
way, and then object when the trial court grants the request. See Prystash v. State, 3
S.W.3d 522, 531 (Tex. Crim. App. 1999) (stating that if party, by requesting a ruling,
leads a court into error, he is precluded from claiming a reversal of the judgment by
reason of the error so committed); see also Tucker v. State, 990 S.W.2d 261, 263
(Tex. Crim. App. 1999) (“It is, of course, possible for a party, who at one time in the
trial preserves a complaint for appellate review, to waive or forfeit the complaint at
another time.”)
          Accordingly, we overrule point of error one.
DENIAL OF MOTION TO EXCUSE VENIRE MEMBER FOR CAUSE
          In point of error two, appellant contends the trial court erred by refusing to
excuse venire member number three, Stephen Feil, for cause after Feil indicated that
he would “probably” give police officers more credibility than other witnesses. The
record shows that appellant exhausted his peremptory challenges, that he asked for
more, which the trial court denied, and that he identified one objectionable juror on
whom he would have exercised a peremptory challenge. Therefore, if we determine
that appellant’s challenge for cause should have been granted, reversible error would
be shown. Martinez v. State, 763 S.W.2d 413, 415 (Tex. Crim. App. 1988).
          Appellant argues that the trial court erred in denying his challenge of venire
member Feil for cause based on the following exchange:
[Prosecutor]: We have and you saw the officer. We got one officer and
two civilian witnesses. The officer is going to come up here and give
his perception of what happened. Now, anyone over here just because
there’s going to be an officer, who would give the person more or less
weight? Who here would give, just because the person is in uniform,
say he’s probably telling the truth more so than anybody else?
 
(Venire member 18 raises hand).
 
[Prosecutor]: You would?
 
[Venire member 18]: Uh-huh. I’m related to two police officers, and I
hear stories about what they have to go through time and time again.
 
[Prosecutor]: What do you mean, ma’am?
 
[Venire member 18]: About what they have to go through to catch
criminals and then they’re let loose and have to catch them over and
over and over.
 
[Prosecutor]: For that reason you would give them more credibility?
 
[Venire member 18]: I certainly would.
 
[Prosecutor]: Thank you very much, ma’am.
 
[Venire Member Feil]: I probably would too.
The trial court then instructed the venire as follows:
Let’s [sic] me just interrupt, [Prosecutor], here a moment. Ladies and
gentlemen, when a witness testified, if you’re sitting for the jury, I’ll
give you criteria . . . for evaluating witnesses. And, of course, obviously
one of them would be the witness’ occupation or line of work and so
one. But on the other hand, you are not allowed to use that as the sole
factor, the only factor for determining a witness’ credibility or lack of
credibility.
 
For instance, if someone is a priest, rabbi, or Methodist minister, police
officer, judge, doctor, whatever. Of course you can take that into
consideration but it can’t be your only factor, the only thing you use, if
they’re a police officer, rabbi, Methodist minister, priest, judge,
whatever. That’s it. You know, you not going to consider anything
else.
 
Does everybody understand that? Is there anybody who can’t follow
that?
 
(No response from panel).

          A venire member is challengeable for cause if he cannot impartially judge the
credibility of witnesses. Jones v. State, 982 S.W.2d 386, 389 (Tex. Crim. App. 1998).
However, this means only that jurors must be open-minded and persuadable, with no
extreme or absolute positions regarding the credibility of any witness. Id. Venire
members are not challengeable for cause simply because they would give certain
classes of witnesses a slight edge in terms of credibility, because “[c]omplete
impartiality cannot be realized as long as human beings are called upon to be jurors.”
Id. Thus, Feil was not challengeable for cause simply because he stated that he would
“probably” believe policemen and doctors more than others. Ladd v. State, 3 S.W.3d
547, 562 (Tex. Crim. App. 1999); Smith v. State, 907 S.W.2d 522, 531 (Tex. Crim.
App. 1995).
          Venire member Feil’s response does not show any “absolute or extreme”
position regarding the credibility of police officers. Unlike venire member 18, Feil
does not state that he would “certainly” give more credibility to the police officer; he
is much more equivocal and uses the term “probably.” Venire member 18, who was
excused for cause, related her favoring the credibility of police officers to the fact that
she had two relatives who were police officers and that she knew the difficulties they
faced in apprehending criminals. Feil gave no explanation for his statement that he
would “probably” give more credibility to police officers and was asked for none.
          Furthermore, the trial court instructed the venire that they could consider a
person’s occupation as a factor in determining his credibility, but that a person’s
occupation alone could not be the sole factor considered. When the trial court asked
the venire if it could follow her instruction, Feil, who had spoken up earlier, made no
verbal response.
          Under these circumstances, we cannot say that the trial court erred by refusing
to excuse venire member Feil for cause.



          Accordingly, we overrule point of error two.
MOTION TO SUPPRESS ORAL STATEMENTS
          In point of error three, appellant contends the trial court erred by denying his
motion to suppress the oral statements he made to Romero at the scene of the
accident. Specifically, appellant contends that Romero’s questioning constituted
custodial interrogation and was taken in violation of his rights under Miranda v.
Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966) and article 38.22 of the
Texas Code of Criminal Procedure.
          The record is unclear about when, exactly, Romero questioned appellant. The
record from the motion to suppress hearing seems to indicate that it occurred after the
field sobriety tests and after Romero placed appellant in handcuffs. However, at
another pretrial hearing, appellant represented to the court that the first question (have
you been drinking?) was asked before Romero administered the HGN test and that
the second question (when was your last drink?) was asked right after the pat down
search, when Romero noticed appellant’s pants were wet. Unquestionably, both
questions were asked and answered at the scene of the accident, either shortly before
or after Romero gave appellant the HGN test. Romero testified that he asked the
questions “[d]uring the investigation phase” of the detention, not during the arrest
phase.
No custodial interrogation
          This Court has recently held that questioning a DWI suspect during a roadside
investigation was not custodial interrogation, even if the questioning occurred after
the defendant had failed several field sobriety tests. See Shpikula v. State, 68 S.W.3d
212, 217 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d); see also Berkermer v.
McCarty, 468 U.S. 420, 440 104 S. Ct. 3138, 3150 (1984) (“[A] single police officer
asked respondent a modest number of questions and requested him to perform a
simple balancing test at a location visible to passing motorists. Treatment of this sort
cannot fairly be characterized as the functional equivalent of a formal arrest.”).
          Even if we assume that appellant had already been handcuffed at the time
Romero asked his questions, we would not conclude that appellant had been formally
arrested. Handcuffing alone will not necessarily convert a temporary detention into
an arrest. See Rhodes v. State, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997); Burkes
v. State, 830 S.W.2d 922, 924 (Tex. Crim. App. 1991). Whether an officer believes
a suspect is detained or arrested is not determinative of the issue. Amores v. State,
816 S.W.2d 407, 412 (Tex. Crim. App. 1991). Rather, we look to the reasonableness
of the officer’s actions, which is to be judged from the perspective of a reasonable
officer at the scene, rather than with the advantage of hindsight. Rhodes, 945 S.W.2d
at 118. Police may use such force as is reasonably necessary to effect the goal of the
detention: investigation, maintenance of the status quo, or officer safety. Id. at 117.
          The record in this case shows that, after the HGN test, appellant refused to
perform any more field sobriety tests. Romero testified that he then “grabbed
[appellant’s] shoulder, his sleeve and, you know, I put him on the car for my safety
because he was starting to get a little irate. And I handcuffed and searched him for
any weapons or things of that nature.” Romero further testified that once he had
appellant handcuffed and placed in the backseat of the patrol car, he “continued to get
information on the accident, and when [Romero] finished working the accident, [he]
transported [appellant] to Cypresswood.”
          Therefore, based on the record before us, we conclude that, given appellant’s
uncooperativeness and belligerence at the scene, it was reasonable for Romero to
secure appellant in handcuffs so that Romero could complete his investigation. The
act of handcuffing appellant did not turn the roadside detention into a full blown
arrest; thus, Romero’s questions to appellant were not custodial interrogation.
No harm
          Furthermore, even if the trial court erred in admitting appellant’s inculpatory
statements to Romero, the error is harmless in light of all the other evidence admitted
on the issue of intoxication. See Tex. R. App. P. 44.2. Chang, Fargo, and Romero all
testified that appellant appeared intoxicated. There was evidence that appellant was
unsteady on his feet, that his eyes were bloodshot, and that his speech was slurred. 
Chang testified that he could not dial the cell phone. Appellant was seen using a rag
to clean the inside of his car, and the rag smelled of alcohol. Finally, there was
evidence that appellant had lost control of his physical faculties by urinating in his
pants and that he was belligerent. Therefore, the inculpatory statements by appellant
were cumulative of other evidence of intoxication presented by the State.
          Accordingly, we overrule point of error three.
JURY CHARGE ERROR
          In point of error four, appellant contends the trial court erred by submitting the
following charge to the jury:
Nothing in the law prohibits the admission of a statement made by the
accused that is the res geste of the arrest or of the offense.

          Appellant argues that the charge was improper because it was not raised by the
evidence. The State concedes that the charge was not raised by the evidence, but
argues that no reversible error is presented because the charge was a correct statement
of the law, was given to the jury only in the abstract jury instructions, and was not
applied to the specific facts of the case. We agree. When an abstract charge is
erroneously given on a theory of law that was not raised by the evidence, but the
theory is not applied to the facts of the case in the abstract or application paragraph,
then the overruling of an objection to the abstract charge is not error. See Hughes v.
State, 897 S.W.2d 285, 297 (Tex. Crim. App. 1994). 
          In this case, the abstract instruction complained of is a correct statement of the
law. See Texas Code Crim. Proc. Ann. art. 38.22 § 5 (Vernon Supp. 2003). More
importantly, there was no statement in the abstract or application paragraph applying
the instruction to the facts of this case. Therefore, the instruction was not erroneous.
          Accordingly, we overrule appellant’s fourth point of error.
LIMITATION OF CROSS-EXAMINATION
          In point of error five, appellant contends his rights under the Confrontation
Clause of the United States Constitution


 were violated because he was not permitted
to question the complainant regarding bias. Specifically, appellant contends he
should have been permitted to ask Mary Chang about her financial interest in a
possible civil suit arising out of the accident.
          The fact that a witness has a pending civil suit against the defendant arising out
of the same incident is admissible to show the pecuniary interest and bias of the
witness. See Cox v. State, 523 S.W.2d 695, 700 (Tex. Crim. App. 1975). A trial court
may properly permit inquiry into the basis of the civil suit and the witness’s pecuniary
interest in the suit. Bigby v. State, 892 S.W.2d 864, 887 (Tex. Crim. App. 1994). 
However, it is not an abuse of discretion for a trial court to prohibit questions that
delve into the intricate details of a civil suit. Id.
          In this case, the trial court permitted appellant to ask whether Mary Chang had
consulted an attorney (which she had) and whether she had filed suit against appellant
(which she had not). However, the trial court did not allow appellant to ask Chang
whether the attorney had recommended that she see a doctor or chiropractor.
          We review the trial court’s limitation of cross-examination for an abuse of
discretion. See Matchett v. State, 941 S.W.2d 922, 940 (Tex. Crim. App. 1996); Knox
v. State, 31 S.W.3d 700, 702 (Tex. App.—Houston [1st Dist.] 2000, no pet.). A trial
court may permissibly limit the scope of cross-examination to prevent harassment,
prejudice, confusion of the issues, harm to the witness, and repetitive or marginally
relevant interrogation. Carroll v. State, 916 S.W.2d 494, 497 (Tex. Crim. App.
1996). In this case, once Chang admitted that she had consulted a lawyer, but denied
having filed a civil suit, the evidence of bias that appellant sought to admit was before
the jury. Therefore, the trial court did not abuse its discretion by limiting appellant’s
cross-examination of Chang regarding bias.
          Accordingly, we overrule point of error five.
CUMULATIVE ERROR
          In point of error four, appellant contends that the cumulative effect of the errors
alleged in points of error one through five was such that he was deprived of due
process under the federal and state constitutions. However, we have found no error
in appellant’s prior arguments. Non-errors, in their cumulative effect, do not amount
to error. Chamberlain v. State, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999); 
Melancon v. State, 66 S.W.3d 375, 381 (Tex. App.—Houston [14th Dist.] 2001., no
pet.).
          Accordingly, we overrule point of error six.
FACTUAL SUFFICIENCY
          In point of error seven, appellant contends the evidence is factually insufficient
because (1) the videotape taken at the station “is simply bereft of evidence from
which a jury could permissibly infer that [appellant] was intoxicated”; (2)
photographs of appellant taken at the scene do not show bloodshot eyes; (3)
appellant’s expert witness, Dr. Joseph Citron, testified that appellant’s ability to walk
steadily was hindered by the facts that his big toe had been amputated, and that he had
chronic arthritis in his knee, hypertension and diabetes, and chronic disc problems;
and (4) appellant’s girlfriend, who arrived at the scene of the accident before
appellant was arrested, testified that he was not intoxicated.
          We follow the usual standard of review for factual sufficiency, Johnson v.
State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000), giving deference to the jury on weight
and credibility determinations. Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim.
App. 1996). In this case, the jury saw the videotape, heard Dr. Citron’s testimony,
and, nonetheless, concluded that appellant was guilty of driving while intoxicated. 
The jury’s verdict is supported by the testimony of all three witnesses at the scene of
the accident, as well as evidence that defendant had urinated in his pants and was
seen cleaning the inside of his car with rags that smelled of alcohol. We cannot
conclude that the jury’s verdict is against the great weight and preponderance of the
evidence.
          Accordingly, we overrule point of error seven.
CONCLUSION
          We affirm the judgment.


                                                                        /s/ Evelyn V. Keyes
                                                                        Justice

Panel consists of Justices Hedges, Keyes, and Duggan.




Publish. Tex. R. App. P. 47.