Opinion issued December 8, 2005




 

                                                    

In The
Court of Appeals
For The
First District of Texas




NO. 01-01-00389-CR




DONOVAN KEITH WAPPLER, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from County Criminal Court at Law No. 5
Harris County, Texas
Trial Court Cause No. 1033687




OPINION ON REMAND FROM 
THE COURT OF CRIMINAL APPEALS

          A jury found appellant, Donovan Keith Wappler, guilty of the misdemeanor
offense of driving while intoxicated (DWI). The trial court, in accordance with an
agreement between appellant and the State, assessed appellant’s punishment at 42
days in jail. On appeal, appellant argued that the trial court erred in imposing a 15-minute time limit on voir dire. We found that, by objecting to the trial judge’s
proposed dismissal of the panel, appellant waived his right to complain that he did not
have an adequate opportunity to conduct voir dire of the panel because any error
caused by the voir-dire limitation would have been cured by the dismissal of the jury
panel.


 See Wappler v. State, No. 01–01–00389–CR (Tex. App.—Houston [1st Dist.]
Jan. 9, 2003), reh’g denied, opinion withdrawn, substituted opinion at 104 S.W.3d
661. Appellant subsequently filed a motion for rehearing with this Court. We denied
the motion, but withdrew our original opinion and substituted a new opinion. See
Wappler v. State, 104 S.W.3d 661 (Tex. App.—Houston [1st Dist.] 2003). In our
substituted opinion, we held that appellant was estopped from complaining about the
voir-dire time limitation because he affirmatively asked the court to seat a jury from
the venire that he claimed he did not have adequate opportunity to question. Id. at
665–66. 
          Appellant subsequently filed a petition for discretionary review with the Court
of Criminal Appeals to challenge our holding that he was estopped from complaining
about an inadequate opportunity to conduct voir dire after objecting to the trial
judge’s expressed intent to dismiss the panel.


 The Court of Criminal Appeals
reversed and remanded the case to this Court with instructions to consider the merits
of this issue. See Wappler v. State, 138 S.W.3d 351 (Tex. Crim. App. 2004).
Accordingly, on remand, we addressed the merits of appellant’s first point of error,
that the trial court erred by giving him only 15 minutes to conduct voir dire. 
Appellant moved for en banc reconsideration of our opinion issued February 24,
2005. We withdraw that opinion and vacate its judgment, issue this opinion in its
stead, and deny appellant’s motion for en banc reconsideration as moot. We reverse
the cause and remand for a new trial.
Facts 
          On December 2, 2000, Mary Chang was on her way from work when she
stopped at a yield sign. Appellant, who was driving a Ford Taurus, hit her car from
the rear. Chang got out of her car and saw that appellant was the only person in the
Taurus. As Chang approached appellant to ask him what had happened, she could
smell alcohol on his breath.
          Chang called 911 from her cell phone and then called her husband. Chang
noticed that appellant was “unbalanced” when he got out of his car, and that he had
to hold onto his car to walk. Chang testified that appellant was “completely drunk.” 
When Chang asked appellant for his insurance information, he handed her three
cards, but he did not say anything. Appellant said that he wanted to go to a gas
station to make a telephone call. Chang was afraid that appellant would have an
accident if he left, so she handed him her cellular telephone. Appellant was unable
to dial, so he handed Chang’s telephone back to her, and she dialed the number for
him. While they were waiting for EMS, appellant got inside his car. Chang noticed
that appellant appeared to be cleaning the inside of his car.
          Chang’s husband, Steve Fargo, arrived at the scene within 10 to 15 minutes
after the accident. Fargo smelled alcohol on appellant’s breath and noticed that
appellant was disoriented and seemed to be “meandering” around. Fargo called the
police from the scene and again told them where the accident was located. Appellant
interrupted and insisted that they were on Highway 249, rather than the Sam Houston
Parkway at Bammel North Houston.
          Harris County Constable Steven Romero arrived at the scene at about 7:50 p.m. 
He noticed that appellant had alcohol on his breath, that his speech was “kind of
slurred,” and that he had bloodshot eyes. Fargo told the officer that he had seen
appellant wiping his dashboard with a rag before Romero arrived. Romero found a
rag on the ground that smelled like alcohol.
          Romero performed a horizontal gaze nystagmus (HGN) test, on which
appellant exhibited all six clues.


 He then asked appellant to perform several field
sobriety tests, but appellant refused. Appellant was uncooperative, insisted that he
had done nothing wrong, and refused to put his hands on the car. Romero grabbed
appellant’s sleeve, placed appellant’s hands on the car, handcuffed him, and patted
him down. Romero testified that appellant’s pants were wet and that, after he patted
appellant down, Romero’s hand smelled like urine. Appellant was placed in the back
of the patrol car. Romero gave appellant no statutory warnings at the scene.
          At some point during the investigation, Romero asked appellant whether he had
been drinking. Appellant stated that he had been drinking at a casino in Louisiana,
but that he had taken his last drink two hours earlier. Romero took appellant to the
police station, where he was read his statutory rights. Romero offered appellant a
breath test, which he refused. Appellant also refused to perform any field-sobriety
tests. Appellant’s refusals were videotaped; the videotape showed appellant to be
belligerent.
Procedural History
          During jury selection at appellant’s trial, the jury panel initially consisted of 20
people. The trial judge conducted preliminary voir dire of the venire members. The
trial judge introduced herself and had the attorneys stand and introduce themselves. 
She asked the panel members if anyone knew either herself or the attorneys. She
asked the panel if they were qualified voters in Harris County; if anyone had ever
been convicted of theft or any felony; if anyone was under indictment or legal
accusation for theft or any felony; if anyone had ever been arrested; if anyone had
himself or had someone close to him been arrested or charged with DWI; if everyone
could read English; and if anyone had anything private to discuss with the Court. The
trial judge instructed the venire members that she would speak individually to anyone
who had any information on these topics. 
          At the bench, for about an hour, the trial court and the attorneys each
questioned the jurors who had information concerning the topics addressed by the
Court. Of the panel of 20 venire members, nine people had information concerning
the trial court’s voir-dire questions. The trial court and both the State’s and the
appellant’s attorneys each individually questioned venire members 1, 2, 4, 7, 10, 11,
12, 15, and 18. The trial court granted six challenges for cause on venire members
1, 2, 4, 10, 12, and 15 and excused them from the courtroom.
          The trial court then asked each of the remaining 14 venire members to stand
up individually and state his name and occupation. The remaining jurors then
individually stated their names and described their occupations. The trial court
explained to the jury that each side would conduct voir dire for 15 minutes. Neither
the State nor appellant’s attorney voiced any objections to the court’s time limit of 15
minutes. 
          The State’s attorney questioned members of the venire panel concerning the
elements of the DWI offense, their feelings about police officers, ways jurors could
tell whether a driver or person was intoxicated, and the jurors’ willingness to convict
based on the testimony of one witness. The trial court granted the State an additional
minute and one-half to finish its voir dire when time was called, on the grounds that
the court had made a few comments from the bench during the State’s voir dire. 
          Appellant’s attorney then conducted his voir dire. He asked how many people
were missing work to be in court, whether the jurors believed that people were
innocent until proven guilty, whether the jurors wondered what appellant had done,
and whether anyone had served on a grand jury; he then explained the concept of
“beyond a reasonable doubt.” Appellant’s attorney also asked the venire members
whether they could think of any reason why a sober person might not want to take a
breath test and whether any of the venire members had experienced any bad
interactions with police officers. Appellant’s attorney then discussed reasons people
might choose not to testify in their own defense at their trial. 
          When time was called, appellant’s counsel requested additional time for voir
dire, stating that he had more issues to cover. The court would not allow him any
more time and told him that he could read the questions he wanted to ask the venire
members into the record at the break, after the parties had exercised their peremptory
strikes. The trial court then granted two challenges for cause, leaving 12 venire
members remaining on the panel.
          Appellant argued that he should be allowed to make his bill of exceptions
before making his strikes and before the jury was impaneled, but the trial judge
denied this request. Immediately before the parties began to exercise their
peremptory challenges, however, venireperson number 18 asked to approach the
bench. The venireperson informed the court that he would be biased against the
defendant and for the State. The State and the defense both moved to strike
venireperson 18, and the judge struck him from the panel. After striking this member
of the venire, the judge proposed to dismiss the panel—evidently believing there
would not be enough venire members left to constitute a jury after the parties
exercised their peremptory strikes. 
          Appellant objected and stated that there was no legal reason for the panel to be
excused, because if the defense and the State exercised strikes against the same
persons (double-strikes), there would still be enough members to constitute a jury. 
The judge agreed not to dismiss the panel. The parties both exercised a strike on
venire member number six, leaving just enough venire members to obtain a jury. 
After the jury was seated, appellant renewed his objection to the limitation on voir
dire and made a bill of exceptions about the questions he would have asked had he
been given additional time. The trial court left the courtroom shortly after defense
counsel began to make his bill, but counsel for the State remained in court. 
          The gist of the questions counsel contended he did not have time to ask
included: (1) whether the venire could consider the full range of punishment; (2)
whether any venire members were members of Mothers Against Drunk Drivers
(MADD); (3) whether any of the venire members had been affected by alcohol and
whether those experiences would cause them to favor the State; (4) whether any of
the venire members would believe a police officer simply because of his occupation
and whether any of the venire members were related to or knew police officers,
resulting in a bias for the State; (5) whether the venire members could disregard
incriminating, but illegally obtained statements; and (6) whether the venire members
would find appellant guilty simply because he had been in an accident.
Limitation of Voir Dire
          Appellant argues that, because he was not able to explore the questions in his
bill of exceptions with the venire, he could not intelligently exercise his peremptory
strikes. Jury selection and the laws governing it are designed to ensure that juries in
criminal cases are fair to both sides; of paramount concern is the defendant’s right to
exercise peremptory challenges intelligently. See Smith v. State, 703 S.W.2d 641,
643 (Tex. Crim. App. 1981). The purpose of voir dire is to (1) elicit information that
would establish a basis for a challenge for cause because the venireman is legally
disqualified from serving or is biased or prejudiced for or against one of the parties
or some aspect of the relevant law; (2) facilitate the intelligent use of peremptory
challenges that may be “exercised without a reason stated, without inquiry and
without being subject to the court’s control”; and (3) indoctrinate the jurors on the
party’s theory of the case and to establish rapport with the prospective jury members. 
See Sanchez v. State, 165 S.W.3d 707, 710–11 (Tex. Crim. App. 2005). Texas trial
courts have broad discretion over the jury-selection process. Barajas v. State, 93
S.W.3d 36, 38 (Tex. Crim. App. 2002). The trial court’s right to dispatch its business
expeditiously must be justly balanced against society’s interest in seating fair juries. 
See McCarter v. State, 837 S.W.2d 117, 120 (Tex. Crim. App. 1992). 
          A trial court may impose reasonable restrictions on the exercise of voir-dire
examination, including reasonable limits on the amount of time each party can
question the jury panel. Caldwell v. State, 818 S.W.2d 790, 793 (Tex. Crim. App.
1991), overruled on other grounds by Castillo v. State, 913 S.W.2d 529 (Tex. Crim.
App. 1995); Ratliff v. State, 690 S.W.2d 597, 597 (Tex. Crim. App. 1985). No bright-line rule identifies what amount of time allowed for voir dire is too short. The
amount of time allotted is not, alone, conclusive. S.D.G. v. State, 936 S.W.2d 371,
380 (Tex. App.—Houston [14th Dist.] 1996, pet. denied). A reasonable time
limitation for one case may not be reasonable for another case; thus, each case must
be examined on its own facts. Ratliff v. State, 690 S.W.2d 597, 601 (Tex. Crim. App.
1985); Ganther, 848 S.W.2d at 882. 
          Standard of Review
          The trial court does not err in restricting voir dire unless the court abuses its
discretion. Barajas, 93 S.W.3d at 38. Absent an abuse of discretion, we will not
reverse the trial court’s refusal to allow defense counsel additional voir-dire time. 
McCarter, 837 S.W.2d at 119; Smiley v. State, 129 S.W.3d 690, 696 (Tex.
App.—Houston [1st Dist.] 2004, no pet.). A trial court abuses its discretion when it
prohibits defense counsel from asking proper voir-dire questions. Rhoades, 934
S.W.2d at 118. When a party complains of an inability to question the venire
collectively, the following two-part test applies: (1) whether the complaining party
attempted to prolong the voir dire by asking questions that were irrelevant,
immaterial, or unnecessarily repetitious and (2) whether the questions the party was
not permitted to ask were proper voir-dire questions. McCarter, 837 S.W.2d at 119. 
When a party’s voir dire is terminated as he attempts to question venire members
individually, we must also consider a third factor—(3) whether the party was
prevented from examining a prospective juror who actually served on the jury. Id.;
Ratliff, 690 S.W.2d at 600. Here, appellant’s voir dire was terminated while his
counsel was asking questions of venire member 19. Therefore, we apply the three-part test. See McCarter, 837 S.W.2d at 120. 
          Bill of Exceptions
          In his bill of exceptions, appellant’s attorney asserted that, had he been
permitted additional time to question the venire panel, he would have explored
several issues with the panel. On appeal, he complains about most of the issues he
raised in his bill of exceptions, contending that:
(1) he was “going to ask whether the jury could consider the full range
of punishment in this case including the minimum punishment range. 
None of the venire panels were examined on that topic.”;
 
(2) he was “not permitted to question the panel on . . . whether anyone
on the panel was a member of Mothers Against Drunk Drivers (MADD)
or how members of the panel’s lives had been affected by alcohol, either
positively or negatively and whether such experiences might cause panel
members to hold a particular bias in favor of the State.”; 
 
(3) he “was unable to more adequately discuss feelings about police
officers with the jury.” He acknowledged that one panel member did
mention that she was related to two police officers. However, his
complaint concerned an inability due to the time restriction to, “ask all
of venire members whether they knew police officers, or whether they
could be more likely to believe the testimony of police officers simply
because of what those individuals did for a living. Further, [appellant’s
attorney] would have attempted to ask the venire panel about whether
they had a bias in favor of police officers and in favor of the State in this
case because of the same.”;
 
(4) he “was also hoping to question the venire panel on the issue of
illegally obtained statements, specifically because it is an issue in this
case. And the defense plans on requesting a jury instruction regarding
the same.”;
 
(5) he would have asked the venire panel, “whether they could disregard
all statements which were taken in violation of defendant’s Sixth
Amendment rights, his right under Article I, Section 10 of the Texas
Constitution as well as Article 38.22 of the Code of Criminal Procedure
by virtue of Article 38.23 of the Code of Criminal Procedure. More
specifically[,] the issue in this case was whether [appellant] had made
incriminating statements to the police officer while [appellant] was
under arrest and without the benefit of Miranda warnings”;
 
(6) he would have asked, “whether people have had a problem with
alcohol or alcoholism in their families and whether those types of
problems would affect venire members service as a juror.” Appellant’s
attorney stated that he would have more thoroughly examined this issue
with one of the seated jurors in the case, venire member 18, who had a
son who was arrested for DWI in Galveston three years ago;
 
(7) he “would have liked to have asked that panel whether the fact that
[appellant] was involved in a motor vehicle accident might cause the
jurors to conclude he’s guilty on that basis and with nothing more.”

          Propriety of Questions
          A “proper” voir-dire question is one that seeks to discover a venire member’s
views on issues relevant to the case. Rhoades, 934 S.W.2d at 119; McCarter, 837
S.W.2d at 121–22. An otherwise proper question is impermissible, however, if it
attempts to commit the juror to a particular verdict based on particular facts. Barajas,
93 S.W.3d at 38. In addition, a voir-dire question that is so vague or broad in nature
as to constitute a global fishing expedition is not proper and may be prohibited by the
trial court. Id. at 39.
          Counsel’s first intended question, regarding the range of punishment, was an
appropriate question on a topic that had not been previously covered. See Goodspeed
v. State, 120 S.W.3d 408, 413 (Tex. App.—Texarkana 2003, no pet.) (noting that
proper voir-dire examination would have ensured that all jurors were qualified to
consider entire range of punishment). Counsel’s second intended question,
concerning membership in MADD and the impact of alcohol on the venire member’s
lives, was a proper question because it was not overly broad and addressed an issue
relevant to the case. His third intended question, regarding bias toward police
officers, was also a proper one. His fourth and fifth intended questions, concerning
“illegally” obtained statements and Miranda warnings, were also proper questions. 
Counsel’s sixth question, however, was simply a variation of his first question
regarding the impact of alcohol on the lives of individual venire members. Although
appellant contends his trial counsel would have questioned venire member 18 further
about this subject, we note that the trial court had granted both parties’ challenges for
cause to venire member 18, dismissing her from the panel before counsel made his
bill of exceptions. Counsel’s seventh intended question—whether the venire
members would conclude that appellant was guilty simply because he was involved
in an automobile accident— was improper because it sought a commitment from the
venire members. 
          Of the intended questions that appellant complains about on appeal, we have
concluded that five were proper questions. Appellant, therefore, satisfied the second
prong of the McCarter test. See 837 S.W.2d at 119. Accordingly, we turn to the
question of whether, had counsel adequately managed his time during voir dire, he
would have had sufficient time to question the venire members concerning their
ability to consider the full range of punishment, membership in MADD, whether they
could disregard incriminating, but illegally obtained statements, the impact of alcohol
on their lives, and the issue of bias toward police officers. 
          Time Management
          Counsel’s use of time during voir dire was neither a model of efficiency nor an
egregious attempt to prolong the voir dire. Although counsel repeated questions on
the same topics already discussed by the trial court during its voir dire and the
individual voir dire and by the State—such as questions concerning the venire
members’ feelings about police officers, whether anyone near to the venire members
had been arrested for DWI, and the venire members’ feelings about alcohol—we
cannot conclude that counsel’s repetition of the same topics was the result of an
attempt to prolong voir dire unduly. Our review of the record shows that counsel
discussed a few matters in a somewhat repetitive manner, but the overall tenor and
content of his voir dire does not show that the questions posed to the venire members
were irrelevant, immaterial, or unnecessarily repetitious. See id. at 121 (“[D]efense
counsel may not be precluded from the traditional voir-dire examination simply
because the questions asked are repetitious of those asked by the court and the
prosecutor.”). Therefore, appellant satisfied the first prong of the McCarter test.
          Truncated Examination of Jurors Who Actually Served on the Jury
          The trial court terminated defense counsel’s voir-dire examination after 15
minutes, while counsel was questioning venireperson number 19, who actually served
on the jury. See id. at 119. Therefore, appellant satisfied the third prong of
McCarter. We hold that appellant has satisfied the three-part test in McCarter and
that the trial court abused its discretion by prohibiting defense counsel from asking
proper voir-dire questions.
          Additional Error
          Within his issue on appeal, appellant complains that the trial court erred by
refusing to consider his bill of exception concerning the voir-dire questions that he
was precluded from asking the venire panel due to the time limits imposed by the trial
court. During his presentation of the bill of exceptions, appellant’s attorney stated
on the record, as follows: 
For the record, Judge Law has stepped out of the room and has not been
present during the making of this bill of exception. And although I’ve
given all the case law to Judge Law, I don’t believe that this bill of
exception is being fairly considered . . . The Defense has been harmed
. . . [a]nd the Defense has not been able to intelligently exercise the
peremptory strikes because the Defense has not been permitted to
question the venire panel on those topics. 

The trial court was not present in the courtroom when appellant’s attorney made his
bill of exception on the record. The trial court also refused to allow appellant’s
attorney to present his bill of exception until after the venire panel was excused and
a jury was seated. By refusing to consider appellant’s attorney’s bill of exception
through her mere presence in the courtroom and before the attorneys made their
peremptory strikes, the trial court deprived herself of the opportunity to evaluate
whether appellant’s proposed voir-dire questions were proper at a time when the error
could have been cured by allowing the questions before the dismissal of the venire.
We hold that the trial court abused its discretion by terminating voir dire and seating
the jury without hearing and evaluating the questions defense counsel was not
permitted to ask. See Ganther, 848 S.W.2d at 282 (holding that purpose of voir dire
includes eliciting information necessary to intelligent exercise of peremptory strikes);
see also Ratliff, 690 S.W.2d at 600 (requiring that appellate court consider whether
party was prevented from examining juror who actually served on panel). We turn,
therefore, to whether the error was harmless.
Harm Analysis
          The Sixth Amendment guarantees the right to a trial before an impartial jury. 
Franklin v. State, 138 S.W.3d 351, 354 (Tex. Crim. App. 2004). The right to
question venire members to exercise peremptory challenges intelligently is an
essential part of that Sixth Amendment guarantee. Id.; see also Gonzales v. State, 994
S.W.2d 170, 171 (Tex. Crim. App. 1999) (“[T]he right to pose proper questions
during voir-dire examination is included within the right to counsel under Article I,
§ 10, of the Texas Constitution.”). If the trial court abuses its discretion by denying
a defendant the right to propound a proper question to prospective jurors, we must
conduct a harm analysis. Gonzales, 994 S.W.2d at 171; see also Cena v. State, 991
S.W.2d 283, 284 (Tex. Crim. App. 1999) (directing appellate court to conduct harm
analysis of trial court’s error in refusing to permit defendant to ask jury panel proper
question).


 
          The Court of Criminal Appeals in Gonzales did not specify whether the harm
analysis required when a defendant is denied his constitutional right to ask a proper
voir-dire question is the constitutional harm analysis under Texas Rule of Appellate
Procedure 44.2(a)


 or the nonconstitutional harm analysis under rule 44.2(b).


 But,
the lower court on remand in Gonzales, the Court of Criminal Appeals itself in a later
case, and this Court have all specified that the harm analysis required is a rule 44.2(a)
analysis. See Franklin, 138 S.W.3d at 354; Rios v. State, 4 S.W.3d 400, 402 (Tex.
App.—Houston [1st Dist.] 1999), pet. dism’d, improvidently granted, 122 S.W.3d
194 (Tex. Crim. App. 2003); Gonzales, 2 S.W.3d 600, 604 (Tex. App.—Texarkana
1999, pet. ref’d). In Franklin, the Court of Criminal Appeals opined as follows:
Under Texas Rule of Appellate Procedure 44.2, the standard of review
for errors of a constitutional dimension differs from the standard for other
errors. . . . We have said before that “[c]onstitutional provisions bear on the
selection of a jury for the trial of a criminal case.” And while not every error
in the selection of a jury violates the constitutional right of a trial by an
impartial jury, we conclude that the error in this case did violate that right.
 
The Sixth Amendment guarantees the right to a trial before an impartial
jury. Part of the constitutional guarantee of the right to an impartial jury
includes adequate voir dire to identify unqualified jurors. And we have
consistently held that essential to the Sixth Amendment guarantees of the
assistance of counsel and trial before an impartial jury “is the right to question
venire members in order to intelligently exercise peremptory challenges and
challenges for cause.”

Franklin, 189 S.W.3d at 355 (citations omitted). Therefore, we analyze the harm of
the trial court’s error in denying appellant the opportunity to ask proper voir-dire
questions under rule 44.2(a).


 
          When the record in a criminal case reveals constitutional error subject to
harmless error review, we must reverse the trial court’s judgment unless we determine
beyond a reasonable doubt that the error did not contribute to the conviction or
punishment. Tex. R. App. P. 44.2(a); Franklin, 138 S.W.3d at 354. Our task is to
calculate, as nearly as possible, the probable impact of the error on the jury in light
of the evidence adduced at trial. McCarthy v. State, 65 S.W.3d 47, 55 (Tex. Crim.
App. 2002) (citing Wesbrook v. State, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000)). 
We must, therefore, calculate, as nearly as possible, the probable impact on the jury
of the trial court’s error in refusing to allow appellant the opportunity to ask proper
voir-dire questions in light of the evidence adduced at trial, to determine whether we
can conclude beyond a reasonable doubt that the error did not contribute to his
conviction or punishment. See Tex. R. App. P. 44.2(a); McCarthy, 65 S.W.3d at 55;
Wesbrook, 29 S.W.3d at 119.
          The Court of Criminal Appeals has determined that, by applying certain,
general factors, we may evaluate how a defendant was harmed by a trial court’s error
in denying a proper voir-dire question during a group setting. Rich v. State, 160
S.W.3d 575, 577 (Tex. Crim. App. 2005). Although the court applied a 44.2(b) harm
analysis rather than a 44.2(a) harm analysis in Rich, because the defendant did not
assert a 44.2(a) complaint on appeal, Rich’s general factors apply under either harm
analysis when determining whether a defendant has been harmed by error in denying
a proper voir-dire question. See id. As the court stated in Rich, 
In the case of the erroneous admission of evidence, we have said that the
appellate court should consider everything in the record, including any
testimony or physical evidence admitted for the jury’s consideration, the
nature of the evidence supporting the verdict, the character of the
alleged error and how it might be considered in connection with other
evidence in the case, the jury instructions, the State’s theory and any
defensive theories, closing arguments, voir dire, and whether the State
emphasized the error. We believe these same general factors are
relevant considerations in determining the harm from being denied a
proper question to the venire.

Id. at 577–78 (footnote omitted) (emphasis added). 
          Accordingly, we assess whether appellant was harmed by denial of the proper
voir-dire questions during the group, voir-dire setting by reviewing the entire record,
including (1) any testimony or physical evidence admitted for the jury’s
consideration; (2) the nature of the evidence supporting the verdict; and (3) the
character of the error and how it might be considered in connection with other
evidence in the case, the jury instructions, the State’s theory and any defensive
theories, closing arguments, voir dire, and whether the State emphasized the error. 
See id. 
          Using rule 44.2(a)’s heightened standard and applying Rich’s general factors,
we address the harm resulting from the trial’s court’s error in refusing to permit
proper voir-dire questions by appellant concerning (1) how the panel would treat
illegally obtained statements and (2) whether the panel could disregard illegally
obtained statements. Because we conclude that harmful error resulted from these
excluded voir-dire questions, we need not address whether harmful error also resulted
from the trial court’s exclusion of the other three proper voir-dire questions.
1. Evidence admitted for the jury’s consideration
          Romero testified that before appellant’s arrest and during the investigatory
phase of the traffic stop, he asked appellant questions that resulted in appellant’s
admitting that he had been drinking since about 11:00 o’clock until he had his last
drink, about two hours prior to the accident, and that the accident occurred while he
was returning to Houston from the casinos in Louisiana. Appellant’s admission that
he had been drinking earlier in the day at casinos is pertinent to the central issue in
this DWI trial, whether appellant was intoxicated. We therefore conclude that this
factor weighs in favor of finding the denial of the proper voir-dire questions harmful. 
          2. The nature of the evidence supporting the jury’s verdict
          The jury faced two competing versions regarding whether appellant was
intoxicated. Chang, the driver of the car that appellant struck, testified that he was
“completely drunk” and unable to dial a cellular telephone. Chang’s husband
testified that he smelled alcohol on appellant’s breath and that appellant seemed
disoriented. Officer Romero likewise testified that appellant had alcohol on his
breath, that his speech was slurred, and that his eyes were bloodshot. Romero also
mentioned that appellant had apparently urinated on himself. 
          Contrary to the State’s evidence, appellant’s girlfriend, Debra McElhany,
testified that appellant was not intoxicated and did not slur his speech or have
bloodshot eyes. She also described appellant’s balance as normal for him and denied
that he swayed. McElhany also testified that appellant gave her correct directions to
the location where she found the collision near the West Sam Houston Tollway. 
McElhany denied that appellant’s pants were wet and that he smelled of urine. Dr.
Joseph Citron, a doctor whom appellant hired to testify at trial, stated that appellant
had difficulty walking and balancing himself due to various physical problems that
included a missing toe, arthritis, and back problems. Dr. Citron also stated that
appellant’s diabetes could cause his breath to smell “almost like a cheap wine that’s
gone bad.” In Dr. Citron’s opinion, appellant did not appear or sound intoxicated on
the videotape recorded at the police station. Additionally, the record shows that
appellant refused to submit a breath sample into the intoxilizer, refused to perform all
field sobriety tests at the scene of the accident and at the police station, and that the
trial court excluded evidence of the results of the HGN test.
          Due to the lack of any physical evidence to connect appellant to the offense,
the State’s case rested entirely on testimonial evidence. Appellant’s admission that
he had been drinking earlier in the day at casinos was part of the State’s evidence
indicating that appellant was intoxicated and, more importantly, corroborated
testimony by the State’s witnesses that described appellant. We therefore conclude
that this factor, too, weighs in favor of finding the denial of the proper voir-dire
questions harmful. 
3. The character of the error when considered in connection with other
evidence in the case, the jury instructions, the State’s theory and any
defensive theories, closing arguments, voir dire, and whether the State
emphasized the error
          At appellant’s request, the court’s charge to the jury included an instruction
that allowed the jury to disregard statements appellant made to the arresting officer
at the scene of the traffic stop.


  The trial court’s instruction is as follows:
The court has admitted into evidence before you the alleged oral
statements of the defendant at the accident scene, and you are instructed
that before you may consider the same for any purpose you must first
believe from the evidence beyond a reasonable doubt that the same was
freely and voluntarily made by the defendant without compulsion or
persuasion by him, and that prior thereto the defendant had been warned
by the person to whom the statement was made that: (1) he had a right
to remain silent and not make any statement at all and that any statement
he made may be used against him at trial; and (2) any statement he made
may be used as evidence against him in court; and (3) he had the right
to have a lawyer present to advise him prior to and during any
questioning; and (4) if he was unable to employ a lawyer, he had the
right to have a lawyer appointed to advise him prior to and during any
questioning; and (5) he had the right to terminate the interview at any
time; and that the defendant prior to and during the making of the
statement, knowingly, intelligently, and voluntarily waived these rights;
but if you do not so believe, or if you have a reasonable doubt thereof,
then the alleged statement is entirely withdrawn from your
consideration, and you shall not give the same any force or effect
whatever or consider it as any evidence of the defendant’s guilt in this
case, and you shall not consider any evidence obtained as a result
thereof, if any. 

          Appellant contends that the trial court’s error in denying him the opportunity
to question the venire members about their ability to follow this instruction precluded
him from determining, in time to exercise his peremptory strikes, whether there were
members of the venire who could not follow this instruction and would vote to
convict based on statements that they determined to be illegally obtained. 
          We cannot ascertain whether the jurors actually followed the trial court’s
instruction that could have resulted in their disregarding evidence of appellant’s
admission to drinking earlier in the day at casinos because appellant was deprived of
the opportunity to question whether the jurors could follow this type of jury
instruction. It is possible, though, that a juror was seated who would otherwise have
been subject to a challenge for cause because of an inability to disregard this type of
evidence, despite the trial court’s instruction not to consider the evidence. See
Barney v. State, 698 S.W.2d 114, 123 (Tex. Crim. App. 1985) (holding that juror
unable to disregard unlawfully obtained confession would be subject to challenge for
cause). 
          Despite our inability to determine whether the empaneled jurors could actually
follow the jury instruction, we “generally presume the jury follows the trial court’s
instructions in the manner presented,” unless that presumption is rebutted by evidence
showing that the jury did not follow the jury instruction presented. Colburn v. State,
966 S.W.2d 511, 520 (Tex. Crim. App. 1998) (presuming that jury followed trial
court’s supplemental jury instruction not to consider parole in reaching verdict after
jury sent note to trial court asking about possibility of parole for life sentence in
capital murder trial, on grounds that defendant neither filed motion for new trial
alleging juror misconduct, nor obtained hearing to adduce facts not in trial court’s
record). Under rule 606(b) of the Rules of Evidence, a juror may not testify “as to
any matter or statement occurring during the jury’s deliberations, or to the effect of
anything on any juror’s mind or emotions or mental processes, as influencing any
juror’s assent to or dissent from the verdict . . .,” but may testify (1) about “whether
any outside influence was improperly brought to bear upon any juror; or (2) to rebut
a claim that the juror was not qualified to serve.” See Tex. R. Evid. 606(b). The
Rules of Evidence therefore precluded appellant from introducing evidence regarding
whether the jury, during its deliberations, did or did not actually follow the jury
instruction given by the trial court. See id. Appellant attempted to adduce facts not
in the trial court’s record during the voir-dire phase of trial by asking the trial court
for permission to conduct a bill of exception before the trial court excused the venire
panel, but the court denied his request. Although appellant did not attempt to
introduce evidence after the trial concerning how the jurors would have answered the
prohibited voir-dire questions, had they been asked, it appears likely that any 
evidence that would have resulted from that inquiry would have been affected by the
jurors’ having heard evidence on the subject matter and having deliberated on the
admissibility of the statements at issue. We therefore conclude that appellant’s failure
to present actual evidence that the jury did not follow the jury instruction should not
be weighed heavily against him under these circumstances. 
          We must reverse the trial court’s judgment unless we determine beyond a
reasonable doubt that the error in denying proper voir-dire questions in a group
setting did not contribute to the conviction or punishment. Tex. R. App. P. 44.2(a);
Franklin, 138 S.W.3d at 354. The only factor that weighs in favor of finding the error
harmless here is the presumption that the jury disregarded the evidence pursuant to
the trial court’s jury-charge instruction that appellant’s statements could not be
considered in the absence of certain statutory warnings. As previously noted,
although we must presume that the jury disregarded appellant’s oral statements, we
cannot determine whether the jurors actually followed the instruction because
appellant was deprived of the opportunity to conduct voir dire concerning the charge
actually given at his trial, which called for the jury to assess evidence pertinent to the
central, disputed issue of his intoxication. 
          The remaining factors all point to a conclusion that the trial court’s error was
harmful. Appellant’s admission that he had been drinking earlier in the day at the
casinos was nearly the equivalent of a confession to DWI; the admission corroborated
the State’s witnesses’ testimonial evidence that described appellant as intoxicated and
was persuasive evidence of appellant’s guilt in this sharply contested DWI trial. 
Under these circumstances, which include the denial of proper voir-dire questions 
on a topic on which the jurors received a charge requiring them to make an
assessment of the evidence that was central to the pertinent issue in the case, and the
deprivation of a trial judge who would listen to or evaluate the excluded voir-dire
questions during a bill of exceptions, we cannot conclude beyond a reasonable doubt
that the denial of the proper voir-dire questions did not contribute to the conviction
or punishment. See Tex. R. App. P. 44.2(a); Franklin, 138 S.W.3d at 354. Thus, we
cannot conclude beyond a reasonable doubt that the trial court’s error was harmless.



          We sustain the point of error on remand.
Conclusion
          We reverse the judgment of the trial court and remand the cause for a new trial.



                                                             Elsa Alcala
                                                             Justice


Panel consists of Chief Justice Radack and Justices Keyes and Alcala.

Justice Keyes dissenting.

Publish. Tex. R. App. P. 47.2(a).