**Opinion issued July 17, 2025.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00544-CR

———————————

**RAYMOND GONZALES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Case No. 1520615**

---

## MEMORANDUM OPINION

A jury convicted the appellant of murder and assessed punishment at confinement for life. The appellant raises four points of error: two related to sufficiency, one related to his right to confront witnesses, and one regarding the trial court reading the indictment to the panel during voir dire. We affirm.

**Background**

The appellant and the complainant, Francisco Zamarripa, were homeless men who frequented the same convenience store in northeast Houston. Surveillance footage of a nearby strip mall from August 11, 2016, shows someone riding a bicycle up to Zamarripa, having some sort of interaction, and then apparently stabbing him. The bicyclist rode off. Zamarripa walked into the store and showed the clerk he had been stabbed in the abdomen. Zamarripa said the assailant was "el guero flaco," but that moniker meant nothing to the cashier. The cashier called 911. Zamarripa died at the hospital of blood loss. The medical examiner testified the stab wound was six inches deep, three-fourths of an inch wide, and made by a single-edged blade.

Police learned that the appellant lived near the convenience store, was known as "el guero," and rode a bicycle. The appellant gave a thirty-six-minute interview to police. For the first fifteen minutes the appellant maintained that, while he knew Zamarripa and had had prior negative interactions with him, he was unaware of the stabbing or Zamarripa's death. After police revealed more details of what they knew, the appellant admitted he stabbed Zamarripa but claimed he did so in self-defense. The appellant claimed Zamarripa had assaulted him in the past, so when Zamarripa approached him in an aggressive manner on August 11 he feared for his life and stabbed Zamarripa. The appellant admitted to leaving the scene. He said he could not remember what he used as a weapon or where he put it.

**Sufficiency of the Evidence to Prove the Offense**

In his first point the appellant claims "there was no evidence, circumstantial or direct, to establish the required culpable mental state."

The standards for sufficiency review for criminal convictions are well known. The evidence is sufficient if a rational factfinder could find each element of the charged offense beyond a reasonable doubt. *Williams v. State*, 582 S.W.3d 692, 700 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd). In assessing sufficiency, we must view the evidence in the light most favorable to the verdict, deferring to the factfinder's implicit credibility determinations. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) ("The jury is the sole judge of credibility . . . .").

The indictment charged two theories of murder. The first alleged the appellant intentionally or knowingly caused Zamarripa's death. The second alleged that, with the intent to cause serious bodily injury to Zamarripa, the appellant committed an act clearly dangerous to human life that caused Zamarripa's death. *See* TEX. PENAL CODE § 19.02(b)(1), (2). When, as here, the State alleges multiple manners of committing an offense, the evidence is sufficient if it proves any of them. *Kitchens v. State*, 823 S.W.2d 256, 259 (Tex. Crim. App. 1991).

In homicide and assaultive cases, there is often no direct evidence of a defendant's state of mind. Factfinders often must infer state of mind from circumstantial evidence. For instance, in the leading case about sufficiency review,

3

*Jackson v. Virginia*, 443 U.S. 307, 325 (1979), the Supreme Court upheld a murder conviction by holding that the factfinder could have inferred an intent to kill from the circumstances of the offense.

The evidence here supports an inference, beyond a reasonable doubt, that the appellant intended to cause, at least, serious bodily injury. Although the exact nature of the weapon is unknown, it was a sharp object large enough to penetrate six inches into Zamarippa's abdomen. The stab went through a rib and penetrated Zamarripa's liver, kidney, and diaphragm. In his interview with police, the appellant admitted the stabbing was intentional, which was part of his self-defense claim.

In his brief, the appellant suggests that a self-defensive state of mind excludes the relevant culpable mental states for Zamarripa's death. The appellant cites no authority suggesting that defending oneself is incompatible with intending to cause death or serious bodily injury. Intentionally causing death or serious bodily injury is often how self-defense works. Self-defense is a question of motive for the defendant's use of force; it is not a question of the defendant's mental state regarding the result of the conduct. *See Alonzo v. State*, 353 S.W.3d 778, 783 (Tex. Crim. App. 2011) ("The self-defense provisions in the Penal Code focus on the actor's motives and on the level of force used, not on the outcome of that use of force.").

The appellant disposed of the weapon. When officers asked him what the weapon was, his immediate answer was, "I can't say nothing right now because I

don't want to incriminate myself." He later said he did not remember what the weapon was or where he put it. "Attempts to conceal incriminating evidence, inconsistent statements, and implausible explanations to the police are probative of wrongful conduct and are also circumstances of guilt." *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

Deferring to the jury's implied credibility findings, the evidence here can support a finding of guilt beyond a reasonable doubt. The appellant admitted to intentionally stabbing Zamarripa, the wound is of a sort that creates an inference of intent to cause, at least, serious bodily injury, and the consciousness of guilt displayed in the interview supports an inference of guilt. We overrule the appellant's first point.

## Sufficiency of the Evidence to Reject Self-Defense

In his second point the appellant contends the evidence was insufficient to support the jury's rejection of his self-defense claim.

In assessing the sufficiency of the evidence to support the jury's rejection of self-defense, we do not look at whether the State presented evidence directly rebutting self-defense, but rather we determine whether, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found against the appellant on the issue of self-defense beyond a reasonable doubt. *Braughton v. State*, 569 S.W.3d 592, 609 (Tex. Crim. App. 2018). As the law applies here, an

5

individual is justified in using deadly force against another when he reasonably believes that the use of deadly force is immediately necessary to prevent the other's use of deadly force. TEX. PENAL CODE §§ 9.31(a), 9.32(a)(2)(A). Thus, self-dense has subjective and objective elements: The defendant must subjectively believe in the immediate necessity of the use of force, and that belief must be objectively reasonable. *Lozano v. State*, 636 S.W.3d 25, 32 (Tex. Crim. App. 2021).

As a starting point, the appellant's self-defense claim was marginal because he never explained why he believed Zamarripa was about to use *deadly* force. In his interview with police the appellant claimed he believed Zamarripa came at him in an aggressive manner, and was going to "assault" him. In a recorded jail call admitted at trial, the appellant claimed he believed Zamarripa was going to "beat the f— out of me." The caller stated his understanding that the appellant stabbed Zamarripa "because he started beating on you, right?" The appellant responded, "No, he didn't." He explained that on the night of the killing, Zamarippa walked up to him with the intent to "strike" him, but the appellant "beat him to the draw" by stabbing him. The appellant said that whenever Zamarripa got drunk he always wanted to assault the appellant. While the appellant claimed that he feared for his life, he never said he thought Zamarripa was armed or explained how Zamarripa assaulting him would be something that qualifies as deadly force. *See Dearborn v. State*, 420 S.W.3d 366, 378 (Tex. App.—Houston [14th Dist.] 2014, no pet.)

6

(holding evidence did not support defendant's claim of self-defense where he shot victim who was "armed" only with his fists, and noting courts have "not treated blows with fists as deadly force.").

We agree with the State that the jury, in its role as factfinder, could have rationally rejected the appellant's self-defense claim based on credibility. "Defensive evidence which is merely consistent with the physical evidence at the scene of the alleged offense will not render the State's evidence insufficient since the credibility determination of such evidence is solely within the jury's province and the jury is free to accept or reject the defensive evidence." *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991), *quoted in Braughton*, 569 S.W.3d at 609.

"A jury is permitted to reject even uncontradicted defensive testimony, so long as its rejection of that evidence was rational in light of the remaining evidence in the record and is not contradicted by indisputable objective facts." *Braughton*, 596 S..W.3d at 612. Here, there were no indisputable objective facts showing the appellant's subjective mental state. The jury could have reasonably rejected the appellant's unsworn self-serving statements in light of the remaining evidence in the record.

The record contains at least a couple objective bases for finding the appellant did not have a defensive state of mind. First, the appellant discarded the murder weapon, which supports an inference he did not have a state of mind consistent with

7

lawful self-defense. *See Whipple v. State*, 281 S.W.3d 482, 498 (Tex. App.—El Paso 2008, pet. ref'd) (concealment is evidence of guilt that rebuts self-defense). Second, the appellant's statements to police that Zamarripa was a bully and the appellant was tired of Zamarripa assaulting him—statements the appellant claims support self-defense—suggest the motive for the stabbing was revenge.

Accepting the appellant's self-defense claim would require accepting his statements as true. The jury did not do that. We cannot substitute our judgment for that of the jury. *Braughton v. State*, 522 S.W.3d 714, 726 (Tex. App.—Houston [1st Dist.] 2017), *aff'd*, 569 S.W.3d 592 (Tex. Crim. App. 2018). We overrule the appellant's second point.

**Sixth Amendment Claim**

In his third point, the appellant argues that his Sixth Amendment right to confrontation was violated by his absence from part of an evidentiary hearing conducted outside the presence of the jury.

One clue the police used to identify the appellant as a person of interest was his bicycle. The surveillance video showed the assailant riding a bicycle, the appellant was known to ride a bicycle, and police found a bicycle at a location where the appellant had slept. But the officer who took the bicycle into evidence, Officer Don, had no memory of taking the bicycle into evidence. Invoking Rule of Evidence 803(5) (commonly called "past recollection recorded"), the State sought to have read

into evidence a report Officer Don wrote contemporaneous with taking the bicycle into evidence.

The trial court held a mid-trial hearing on this request. The first part of Officer Don's testimony at the hearing takes up four pages in the transcript. She said that she did not remember collecting the bicycle but she recognized the offense report as one of hers because it had her name and payroll number on it. She said that Houston Police Department policy was to write reports the same day as the events they described.

The attorneys and trial court had a series of exchanges that take up two-and-a-half pages in the reporter's record, at which point defense counsel said that the appellant was "not in the courtroom." The trial court replied, "Let's bring out [the appellant]," then the record notes his presence.

The attorneys and trial court had a further discussion about the mechanics of admitting the report, then Officer Don testified for four more pages of transcript, during which she identified State's Exhibit 27 as being a bicycle that matched the description of the bicycle in her report. The trial court admitted State's Exhibit 27. When the jury was brought back in, Officer Don's report was read into evidence.

In his third point of error the appellant claims that his absence from part of Officer Don's testimony at this evidentiary hearing violated his Sixth Amendment right to confrontation. We need not address the merits of this claim because, as the

State argues, even if the trial court committed error, the error would not warrant reversal.

Constitutional error requires reversal unless the appellate court determines, beyond a reasonable doubt, that the error "did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a). Here, the bicycle had no bearing on whether the stabbing was justified, which was the only question presented to the jury. The appellant admitted stabbing Zamarripa, both in the police interview and in letters and jail calls admitted into evidence.

Also, Officer Don was not the only source of testimony about the bicycle. Another witness testified, without objection, that police recovered a bicycle as part of this investigation.

We conclude the admission of the bicycle and Officer Don's report did not contribute to the appellant's conviction or sentence. The appellant advances no argument the bicycle itself, or anything in Officer Don's report, was more harmful than testimony to the bare fact that a bicycle had been recovered. "It is well established that the improper admission of evidence does not constitute reversible error if the same facts are shown by other evidence which is not challenged." *Crocker v. State,* 573 S.W.2d 190, 201 (Tex. Crim. App. 1978), *quoted in Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998).

The only harm the appellant alleges in his brief is the admission of the bicycle. It's unclear how the appellant's presence for more of the hearing would have resulted in the exclusion of the bicycle. In any event, because the bicycle was such a marginal piece of evidence, we conclude any error in its admission would be harmless beyond a reasonable doubt. We overrule the appellant's third point.

**Reading the Indictment During Voir Dire**

In his fourth point the appellant alleges the trial court erred by reading the indictment to the jury panel during voir dire. The appellant claims this violated his Texas constitutional right to an impartial jury.

The appellant cites no authority showing this was error. He cites cases holding a trial court may prohibit a party from using the facts of the case as the basis for questions during voir dire, but that's not what happened here. And he cites Code of Criminal Procedure Article 36.01, which requires the trial court to read the charging instrument to the jury at the beginning of trial. This, however, is not a prohibition on reading it during voir dire.[1] Indeed, the State directs us to *Lara v. State*, where we held a trial court's failure to read the indictment at the beginning of trial was

---

[1] The appellant frames the preservation and harm portions of his argument as though the complained-of error is constitutional. If the trial court's act was a violation merely of Article 36.01, that is not a constitutional error. The appellant makes no argument about why he would be allowed to raise an Article 36.01 complaint on appeal without having objected in the trial court.

harmless because the trial court had read the indictment during voir dire. 740 S.W.2d 823, 829 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd).

The appellant offers no argument about how reading the indictment in voir dire makes the jury partial if reading the same document to them at trial does not. The jury here, as in virtually every criminal case, was instructed that the indictment was not evidence of guilt.

Even if reading the indictment in voir dire somehow made the jury partial, the right to an impartial jury, under either the federal constitution or the Texas constitution, is subject to ordinary rules of forfeiture. *State v. Morales*, 253 S.W.3d 686, 697 (Tex. Crim. App. 2008); *see Delrio v. State*, 840 S.W.2d 443, 446 (Tex. Crim. App. 1992). The appellant claims his complaint is not subject to forfeiture, but the only authority he cites for this regards the right to a jury. The appellant had a jury trial. A complaint of partiality regards the composition of the jury, a different complaint than the lack of a jury. *Compare Franklin v. State*, 138 S.W.3d 351, 354 (Tex. Crim. App. 2004) (right to impartial jury includes adequate voir dire to identify unqualified jurors) *with Rios v. State*, 665 S.W.3d 467, 479–82 (Tex. Crim. App. 2022) (waiver of right to jury trial must be voluntary, knowing, and intelligent). As we and our sister court have done before with identical arguments, we reject the appellant's fourth point because he forfeited it by not raising a contemporaneous objection. *Baptiste v. State*, No. 01-23-00504-CR, 2025 WL 1298310, at *4 (Tex.

12

App.—Houston [1st Dist.] May 6, 2025, pet. filed) (mem. op., not designated for publication); *Allen v. State*, No. 14-23-00761-CR, 2025 WL 978216, at *9 (Tex. App.—Houston [14th Dist.] Apr. 1, 2025, no pet.) (mem. op. not designated for publication).

## Conclusion

We affirm the trial court court's judgment.

Clint Morgan
Justice

Panel consists of Justices Rivas-Malloy, Guiney, and Morgan.

Do Not Publish.